993 F.2d 7
 In re JOINT EASTERN AND SOUTHERN DISTRICT ASBESTOS LITIGATION.
In re JOHNS-MANVILLE CORPORATION, Debtor.
Bernadine K. FINDLEY, as Executrix of the Estate of Hillard
Findley, et al., Plaintiff-Appellees,
Putative Class Members Owens-Corning Fiberglass Corporation,
et al., Appellants,
v.
Donald M. BLINKEN, et al., Defendants-Appellees,
Manville Personal Injury Settlement Trust, et al., Appellees.
In re Bernadine K. FINDLEY, as Executrix of the Estate of
Hillard Findley, et al., and Donald M. Blinken, et
al., Petitioners.
Bernadine K. FINDLEY, as Executrix of the Estate of Hillard
Findley, et al., and Donald M. Blinken, et al., Appellants,
v.
Leslie Gordon FAGEN, as Legal Representative of Future
Claimants, Appellee.
 Nos. 900-913, 1071, Dockets 91-5068(L), 91-5064(L),
91-5072(L), 91-5074(L), 91-5076(L), 91-5078(L), 91-5080(L),
91-5083(L), 91-5084(L), 91-5086(L), 91-5088(L), 91-5090(L),
91-3029(L), 91-5036(L) and 91-5070(L).
 United States Court of Appeals,
Second Circuit.
 Petition for Rehearing Submitted
Feb. 17, 1993.
 Decided May 5, 1993.
 
 Roger E. Podesta, New York City (Anne E. Cohen, Geoffrey H. Coll, Marc E. Elovitz, Joseph Evall, Debevoise & Plimpton, New York City, John D. Aldock, William R. Hanlon, Shea & Gardner, Washington, DC, Andrew T. Berry, McCarter & English, Newark, NJ, on the brief), for appellants representatives of the co-defendant beneficiaries.
 Tybe A. Brett, Pittsburgh, PA (Thomas W. Henderson, Henderson & Goldberg, Pittsburgh, PA, Richard F. Scruggs, Hayden S. Dent, Pascagoula, MS, Hal C. Pitkow, Washington, DC, Robert E. Sweeney and Mary B. Sweeney, Cleveland, OH, and Peter G. Angelos & Timothy J. Hogan, Baltimore, MD, on the brief), for appellants Bainter, Abbey, Austin, Coleman, Nicholson, et al.
 James C. Gavin, Haddonfield, NJ (Gavin & Gavin, on the brief), for appellants Alston, et al.
 John H. Faricy, Jr., Minneapolis, MN (James J. Higgins, Boyar, Higgins & Suozzo, Morristown, NJ, on the brief), for appellants MacArthur Co., Western MacArthur Co., and Milwaukee Insulation, Inc.
 Elihu Inselbuch, New York City (C. Sanders McNew, Caplin & Drysdale, Ness, Motley, Loadholt, Richardson & Poole, Cartwright, Slobodin, Bokelman, Wilentz, Goldman & Spitzer, Baron & Budd, Rose, Klein & Marias, on the brief), for appellee plaintiff class on the main appeal & for petitioner plaintiff class on the mandamus petition & appellant plaintiff class on the Interim 706 Report appeal.
 David T. Austern, Gen. Counsel, Washington, DC (Kemble H. Garrett, Deputy Gen. Counsel, on the brief), for appellee Manville Personal Injury Settlement Trust on behalf of its Trustees on the main appeal and for petitioners Trustees on the mandamus petition and appellants Trustees on the Interim 706 Report appeal.
 Leslie Gordon Fagen, New York City (Clifford Petersen, Beth Friedman Levine, Jane Anne Murray, Paul, Weiss, Rifkind, Wharton & Garrison, on the brief), for appellee Legal Representative of Future Claimants.
 Katherine M. Steel, Madden, Poliak, MacDougall & Williamson, Seattle, WA, submitted a brief, for appellant E.J. Bartells Co.
 David M. Lascell, Hallenbeck, Lascell & Pineo, Rochester, NY, for appellant Hopeman Bros., Inc.
 Lynn M. Luker, Adams & Reese, New Orleans, LA, and Norman J. Barry, Rothschild, Barry & Myers, Chicago, IL, for appellant Foster Wheeler Corp., Foster Wheeler Energy Corp., and Foster Wheeler Boiler Corp.
 William F. Mahoney, Segal, McCambridge, Singer & Mahoney, Ltd., Chicago, IL, for Greene, Tweed & Co., John J. Repcheck, Sharlock, Repcheck & Mahler, Pittsburgh, PA, for appellant Anchor Packing Co., submitted a brief.
 James W. Whitcomb, Paul F. Jones, Phillips, Lytle, Hitchcock, Blaine & Huber, Buffalo, NY, submitted a letter brief for appellants Gen. Refractories Co. & Grefco, Inc.
 Steven Kazan, Kazan, McClain, Edises & Simon, Oakland, CA, & Bryce C. Anderson, Concord, CA, submitted a brief, for amicus curiae, Asbestos Victims of America.
 Before: FEINBERG, NEWMAN, and WINTER, Circuit Judges.
 JON O. NEWMAN, Circuit Judge:
 
 
 1
 A petition for rehearing has been filed urging reconsideration of one of the matters determined in our 73-page opinion that adjudicated the numerous issues raised on appeal from the Trial Courts' 525-page opinion. The petition, filed by the plaintiff class, urges reconsideration of our ruling that the subclasses needed to be established in order to permit the Trial Courts to obtain valid consents approving a settlement in a mandatory non-opt-out class action that modifies the so-called FIFO queue must include: (a) a subclass for those sufficiently at the front of the queue under the pre-Settlement provisions to assure payment of claims before the Trust's funds run out and (b) a subclass for those farther down the queue who would receive no funds if payments were made under the pre-Settlement provisions strictly in FIFO order. The petition is supported by the Trustees and by the Representative of the Future Claimants and is opposed by the appellants, the Asbestos Disease Claimants who objected to the Settlement. Deeming the petition to raise a substantial issue, we requested a response to the petition and have afforded various parties an opportunity to submit briefs.
 
 
 2
 Our ruling that two subclasses were required for those at the front and back ends of the FIFO queue (divided at the rank in the queue where available funds are estimated to run out) was premised on one factual point and one legal point. The factual point was that the FIFO queue established a priority of payment. The legal point was that the payment priority was sufficiently within the contemplation of the parties that negotiated and voted to approve the Plan as to give rise to a protectable interest of those at the front end of the queue that could not be abrogated by the consent of representatives of a class that lumped those at the front end with those at the back end. Upon reconsideration, we conclude that our factual point was somewhat incorrect and that our legal point was entirely incorrect.
 
 
 3
 The FIFO queue does not in terms establish priority of payment. Instead, the pertinent provision of the Claims Resolution Procedures provides, as we pointed out in our initial opinion, that "claims will be processed 'in order of initial filing ... on a first-in-first-out basis....' " 982 F.2d 721, 726 (2d Cir.1992) (quoting Trust Agreement, Annex B, § I.A.2) (emphasis added). Nevertheless, our initial opinion referred to the establishment of "a strict order-of-filing priority to govern payment of all health claims." 982 F.2d at 742 (emphasis added). The plaintiff class, on the initial appeal, also referred to a "payment queue." See Brief for Appellee Plaintiff Class at 4.
 
 
 4
 In fact, the Claims Resolution Procedures relate payment priority to order of filing to a significant extent, but with notable exceptions. Claims processed in order of filing and liquidated without court adjudication are to be paid within specified time intervals measured from date of liquidation. For example, claims liquidated by settlement are to be paid within 20 business days of acceptance of a final offer or counter-offer. Trust Agreement, Annex B, § II.B.9-.10. Claims liquidated by binding arbitration are to be paid within 30 days of an arbitrator's award. Id. § II.D.6. Claims liquidated by court adjudication are apparently to be paid according to the procedures in force in the jurisdiction in which the adjudication occurs, which presumably provide for obtaining payment shortly after adjudication.
 
 
 5
 The FIFO processing queue contains various exceptions. Claimants may move to the front of the queue if they have settled with all other liable asbestos manufacturers except Manville, id. § I.A.2, if they face extreme hardship, id. § II.B.7, or, in some circumstances, if their claims are presented as part of a group settlement, id. § I.A.2. In addition, the class plaintiffs and the Trust represent, and the appellants do not dispute, that in practice the FIFO queue was repeatedly circumvented as a result of the pressures placed upon the Trust by the threat of litigation, including impleader actions. To avoid litigation costs, the Trust felt itself obliged to settle many claims of those who exercised their right to file lawsuits. Once liquidated through settlement in advance of trial, the claims of these claimants became entitled to payment much earlier than would have occurred if the claim had remained in its place in the FIFO queue.
 
 
 6
 Despite the exceptions to and the circumvention of the FIFO queue, the filing order functioned as an approximate determinant of priority of payment (or at least would have so functioned in the absence of subsequent orders staying payments). Those who stood near the head of the queue were generally able, through settlement, litigation, or threat of litigation, to secure entitlement to payment substantially ahead of those whose claims might not be filed until several years later. Though some later filers might jump ahead of some earlier filers, it remains the case that had no revision of the Claims Resolution Procedures occurred, those who filed early would, in general, have been paid ahead of those who filed in later years. Indeed, the prospect that the funds of the Trust would be depleted by paying the early filers, leaving nothing for the later filers, was the driving motivation behind the restructuring of the Trust.
 
 
 7
 Whether we view the FIFO queue as establishing a payment priority or, more properly, as establishing only a processing priority that achieved a substantial degree of payment priority, we are obliged to reconsider our prior assumption that the priority specified by the FIFO queue created legally enforceable rights among the health claimants. That assumption underlay our ruling that a settlement varying the FIFO queue could not be approved upon the consent of representatives of the undifferentiated class of health claimants, without subclasses for the groups on either side of the line that would have divided those who would receive funds before the money ran out and those who would receive nothing.
 
 
 8
 Alerted by the vigorous contention of the plaintiffs and the Trust, upon petition for rehearing, that the FIFO queue was never intended to create enforceable rights, we invited the parties to identify any pertinent portions of the record that would illuminate the issue. In response, the objectors to the Settlement have totally failed to cite anything in the record that supports a contention that the FIFO queue was intended to create enforceable rights. For their part, the plaintiffs and the Trust have cited significant evidence that no such enforceable rights were intended.
 
 
 9
 In the first place, the Disclosure Statement, distributed in connection with confirmation of the Plan, contains only one isolated reference to the FIFO queue, Disclosure Statement at 44, and gives no hint whatever that a purpose of the FIFO processing priority is to assure payment of those at the front end of the queue. Moreover, a layman's explanation of the Plan, circulated by the Asbestos Health Claimants' Committee, makes no mention of the FIFO queue whatsoever. Indeed, rather than suggest that early filers would have a better prospect of receiving payment than later filers, the explanation conveyed the expectation, then widely shared, that "[t]he Reorganization Plan will provide enough money to pay fair compensation to all asbestos victims." Plaintiffs' Exhibit C. Moreover, a "Q and A" explanation of the Plan made this relevant point in explaining why the Plan prohibited awards of punitive damages:
 
 
 10
 Allowing punitive damages would mean that some people would receive more than their fair share of the funds simply because they filed earlier.
 
 
 11
 Plaintiffs' Exhibit D. This strongly implies that with regard to compensatory damages, early filers would receive no enhanced assurance of payment compared to later filers. Finally, the health claimants' precise position in the FIFO queue could not have been a consideration in the approval of the Plan in 1986 because the claimants were not organized into a FIFO queue until April 1989, more than two years after the claimants voted to confirm the Plan.
 
 
 12
 The Disclosure Statement did acknowledge that because some projections might not be realized, "[i]t is therefore impossible to state with absolute certainty that there will always be sufficient funds available to the Trust to pay all asbestos health claims as they are liquidated." Disclosure Statement at 9 (emphasis added). This suggests that later filers might experience temporary delays in obtaining payment if claim liquidations exceeded cash flow projections, but does not imply that early filers have a protected right to payment that might be entirely denied to later filers. The prospect of temporary delay in payments to some later filers is also reflected in the acknowledgment that "the Trust is likely to experience periods when the payment of claims will be dependent upon the timing of receipt of payments from Manville." Id. at 61 (emphasis added).
 
 
 13
 In sum, we have been cited to nothing in the record to indicate that the FIFO queue was bargained for as part of the Claims Resolution Procedures to assure early filers payment in the event that the Trust ran out of funds before all health claimants were paid. It is true that once the prospect arose that the funds of the Trust would be depleted before all claimants had been paid, the effect of the FIFO queue, if not modified, would have been to provide full payment to early filers and no payment to later filers. Our assumption in our initial opinion was that the Plan proponents had secured the FIFO queue as protection against such an eventuality. See 982 F.2d at 743. It was our belief that they had done so that prompted us to require the creation of subclasses representing early and late filers before consents could be given to new procedures that eliminated the FIFO queue. Now that we have been shown the absence of any basis for concluding that the FIFO queue was established to assure early filers protectable rights to payment, in preference to later filers, we need not require subclasses of early and late filers to consent to the changes achieved by the Settlement.
 
 
 14
 Accordingly, we grant the petition for rehearing and modify our prior opinion to eliminate the requirement, on remand, of creating subclasses of early and late filers in order to obtain valid consent to the Settlement. The other subclass requirements detailed in our prior opinion remain undisturbed.
 
 
 15
 FEINBERG, Circuit Judge, concurring and dissenting:
 
 
 16
 The effect of the majority's amended opinion is to eliminate the need for subclasses based upon FIFO. I applaud that ruling for reasons set forth in my original concurrence and dissent, 982 F.2d at 754-56. I regret that the majority has not gone further and allowed the entire treatment of the health claimants under the Settlement to stand, since I do not see the fatal adversity or the inadequacy of representation that the majority does between Levels One and Two. However, appellees, who are not bashful, did not ask for rehearing on the requirement of Level One and Level Two subclasses. Under the circumstances, I do not regard it as appropriate or useful to add to what I have already said about this issue. See 982 F.2d at 756-57.