14 F.3d 726
 In re JOINT EASTERN AND SOUTHERN DISTRICT ASBESTOS LITIGATION.
In re KEENE CORPORATION.
KEENE CORPORATION, Plaintiff-Appellee,
v.
Joseph FIORELLI; Victor E. Dacey; Leonard Saks; Michael
Moe; X Corporation; Z Corporation; Asbestos
Corporation, and all others similarly
situated, Defendants,
Robert G. Carlisle; Regis C. Coll; Francis S. Hanna;
Harry Harbacho; Helen Kane; Sharon A. Mowry,
Administratrix of the Estate of Andy Yuschak, Kansas City,
Missouri; Martha Boring, Executrix of the Estate of Wilbur
J. Boring, deceased; Veronica A. Fox, Administratrix of the
Estate of Joseph F. Fox, deceased; Avanell Gallagher,
Administratrix of the Estate of Joseph J. Gallagher,
deceased; William C. Gorzelsky; Elizabeth Gorzelsky, his
wife; Ethel Grove, Administratrix of the Estate of Charles
G. Grove, deceased; Dorothy Kawchak, Executrix of the
Estate of Mike Kawschak, deceased; Nick Kosjer; Mary
Kosjer, his wife; Rosemary Luprek, Administratrix of the
Estate of Steve J. Luprek, deceased; Leola March,
Administratrix of the Estate of Charles March, deceased;
Helen R. Petruska, Administratrix of the Estate of Joseph J.
Petruska, deceased; Mary Jane Skelton, Administratrix of
the Estate of Thomas Skelton, deceased; Irene Sprankle,
Administratrix of the Estate of Clarence Sprankle, deceased;
Janet Swanhart, Administratrix of the Estate of Raymond L.
Swanhart, deceased; Eleanor Williams, Executrix of the
Estate of Carl W. Williams, deceased; Catherine Yakicic,
Administratrix of the Estate of Edward J. Yakicic, deceased;
Victor Dacey, as individually and as Court appointed
representative of the putative sub class of all asbestos
claimants; Rachel Kalikstein, individually and as Executrix
of the Estate of Kalman Kalikstein; Sylvia Bleiweiss,
individually and as Executrix of the Estate of Arthur
Bleiweiss; Semi Deutsch, individually and as Administratrix
of the Estate of Eddy Deutsch, each on her own behalf and on
behalf of all judgment creditor beneficiaries of certain New
York State Appellate Division and New York State Supreme
Court ordered escrow agreements; Shirley R. Martin,
Administratrix of the Estate of James R. Martin, deceased;
309 Pennsylvania Keene Absent Class Members Settlement
Creditor; State of West Virginia, a member of the putative
class of defendants; Katherin I. Verdin, Personal
Representative of Robert N. Verdin, a member of the
defendant class, and specifically, a member of Sub-Class C;
and St. Paul Fire & Marine Insurance Company, Appellants.
 Nos. 832, 833, 834, 835, 836, 621 and 837, Dockets 93-7712,
93-7740, 93-7742, 93-7744, 93-7746, 93-7774,
93-7784 and 93-7842.
 United States Court of Appeals, Second Circuit.
 Argued Oct. 29, 1993.
Decided Dec. 1, 1993.
 
 Russel H. Beatie, Jr., New York City (Charna L. Gerstenhaber, Peter S. Liaskos, Beatie, King & Abate, of counsel), for plaintiff-appellee.
 Tybe A. Brett, Pittsburgh, PA (Thomas W. Henderson, Henderson & Goldberg, of counsel), for appellants Carlisle and Boring.
 Henry P. Monaghan, New York City (Ellen P. Chapnick, of counsel), for appellant Kansas City, MO.
 Gene Locks, New York City (Jonathan W. Miller, Erik Jacobs, Greitzer & Locks, of counsel), for appellants 309 Pennsylvania Settlement Creditors.
 Steven J. Phillips, New York City (Robert I. Komitor, Alani Golanski, Jerry Kristal, Levy Phillips & Konigsberg, New York City, Greitzer & Locks, Philadelphia, PA, of counsel), for appellants Escrow Agreements Beneficiaries.
 D. Bobbitt Noel, Jr., Houston, TX (Vinson & Elkins, of counsel), for appellant St. Paul Fire & Marine Ins. Co.
 Peter G. Angelos, Timothy J. Hogan, Baltimore, MD, of counsel, for appellant Katherine I. Verdin.
 Daniel J. Popeo, Paul D. Kamenar, Richard A. Samp, Washington Legal Foundation, Washington, DC, of counsel, for amicus Washington Legal Foundation.
 Sherman L. Cohn, Washington, DC, for amicus Representative of Future Claimants.
 Before: VAN GRAAFEILAND and WINTER, Circuit Judges, and POLLACK, District Judge.*
 WINTER, Circuit Judge:
 
 
 1
 This is an appeal from Judge Weinstein's order issuing a preliminary injunction and certifying a mandatory limited-fund class action pursuant to Fed.R.Civ.P. 23(b)(1)(B). The underlying action's claim for relief is unique. It seeks a settlement with a mandatory class of all persons with present or future asbestos claims against Keene Corporation. Keene, however, does not claim that it has a right to such a settlement. Because this claim is not a case or controversy within the meaning of Article III, we vacate the district court's preliminary injunction and order the complaint dismissed.
 
 BACKGROUND
 
 2
 In 1968, Keene purchased Baldwin-Ehret-Hill ("BEH"), a manufacturer of acoustical ceilings, ventilation systems, and thermal insulation products. BEH became a wholly owned subsidiary of Keene and was later merged into Keene Building Products Corporation ("KBPC"), another Keene subsidiary. From 1968 until 1972 or early 1973, BEH used asbestos in its insulation and acoustical products.
 
 
 3
 Keene's acquisition of BEH led to Keene's extensive involvement in asbestos litigation. Since 1977, Keene has been named in approximately 190,000 asbestos bodily injury claims. Keene has resolved over 95,000 of the claims, leaving roughly 98,000 claims pending against it. On average, some 2,000 new claims are filed against Keene each month, with no prospect of decline in the foreseeable future. Keene has spent $447 million on asbestos litigation so far.
 
 
 4
 As of May 31, 1993, Keene had liquid assets of $80,302,000, and non-liquid assets of $8,344,000 in the form of Keene's one operating subsidiary, Reinhold Industries, Inc. Keene has contingent assets of $25,500,000 in disputed insurance claims. Keene has current non-asbestos liabilities of $7,497,000, deferred liabilities of $2,062,000, and escrowed judgments and appeal bonds of approximately $53,225,000. Keene's net assets, therefore, are $51,362,000, including the disputed insurance claims.
 
 
 5
 Keene brought this action by filing papers styled a "Verified Class Action Complaint in Connection with Settlement" on May 13, 1993. Paragraphs 1 through 3 of the complaint claim subject matter jurisdiction based on diversity jurisdiction, 28 U.S.C. Sec. 1332(a), admiralty and maritime jurisdiction, 28 U.S.C. Sec. 1333, and supplemental jurisdiction, 28 U.S.C. Sec. 1367(a). Paragraphs 4 through 16 describe the parties. The defendants are named individuals who have asserted asbestos-related claims against Keene and a mandatory class of present or future asbestos claimants. Paragraphs 17 through 28 describe Keene's history of asbestos litigation. Paragraphs 29 through 48 recount Keene's expenditures on asbestos litigation and its current assets. Paragraphs 49 through 64, entitled "Class Action Allegations" allege facts supporting class certification and recommend subclass divisions. Paragraphs 65 through 73, entitled "The Settlement," read as follows:
 
 
 6
 65. This is a settlement class action. Keene seeks court assistance, as provided by Rule 23(b)(1)(B), to negotiate and eventually approve a settlement that fairly resolves the claims with the limited funds Keene has available.
 
 
 7
 66. The Settlement Agreement will be designed to ensure that Keene complies with its obligations to the Class, but at the same time will preserve a portion of its assets for continued operations, in order that Keene may achieve an adequate balance for the protection of its shareholders.
 
 
 8
 67. Certification of the Class for settlement purposes can avoid a potential bankruptcy of Keene by allowing the asbestos-related personal injury, wrongful death, property damage and contribution litigations against Keene to come to a successful and final resolution in an expeditious and fair manner with a minimum of transaction costs.
 
 
 9
 68. Keene is presently a defendant in approximately 98,000 asbestos-related personal injury and wrongful death actions and approximately 49 property damage actions, many of which are scheduled to commence trial in the spring and summer of 1993.
 
 
 10
 69. Continued prosecutions of the approximately 98,000 pending actions against Keene nationwide will defeat the purpose of the proposed Class Action and any chance for settlement by depleting the limited fund, thereby preventing the fair, adequate, and equitable compensation of the Class.
 
 
 11
 70. The continuation of asbestos-related personal injury, wrongful death, property damage, and contribution litigations against Keene will result in irreparable harm to Keene, the Class, and the limited fund.
 
 
 12
 71. An injunction barring all pending and future asbestos-related personal injury, wrongful death, and property damage litigation against Keene is necessary to preserve this Court's jurisdiction over the proposed class action and over the limited fund, and to protect any judgment issued herein.
 
 
 13
 72. Keene and all members of the Class, as claimants to the limited fund, are without an adequate remedy at law.
 
 
 14
 73. In the event the parties cannot reach a settlement, the order conditionally certifying the settlement class should be vacated.
 
 
 15
 Paragraphs 74 and 75 describe the "limited fund," essentially Keene's assets available to satisfy present and future asbestos claims. The remaining paragraphs, 76 through 78, specify the relief sought. In particular, paragraph 76 asks the court to "use its equitable powers to enter a declaratory judgment that Keene is not liable to defendants for any damages that relate to its manufacture and sale of products containing asbestos." Paragraph 77 asks that the court certify a class of asbestos claimants "[i]n connection with its request for a declaratory judgment." Paragraph 78 then provides: "The purpose of certifying this class is to facilitate the formation of a settlement that will mutually benefit both the claimants and Keene Corporation."
 
 
 16
 Upon filing of the complaint, Judge Weinstein referred the matter to Special Master Marvin E. Frankel for determination of the following questions:
 
 
 17
 (1) Whether the financial assets of Keene Corporation are so limited that there exists substantial risk that payment for the present and prospective asbestos-related personal injury and wrongful death claims brought against the company will be placed in jeopardy?
 
 
 18
 (2) Whether there is a substantial probability that if damages are awarded, the claims of earlier litigants would exhaust the defendant's available and projected assets, including any pertinent insurance proceeds?
 
 
 19
 Special Master Frankel held evidentiary hearings on these questions, and at the close of the hearings, stated on the record that it was his "tentative belief" that Keene was a "limited fund." The next day, June 16, 1993, Keene requested a temporary restraining order staying all asbestos litigation then pending and thereafter commenced in which it was a defendant. Judge Weinstein heard argument on June 18 and issued an order to show cause and a temporary restraining order that day. The order also stayed execution or enforcement of judgments and settlements already obtained against Keene.
 
 
 20
 On June 28, 1993, the Carlisle appellants moved to dismiss Keene's complaint pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6). Judge Weinstein had not ruled on the motion as of the time proceedings were stayed pending the appeal.
 
 
 21
 On June 29, 1993, Special Master Frankel filed a Report in which he answered both questions in the affirmative. On July 1, 1993, Judge Weinstein entered an order that adopted Special Master Frankel's report, found that Keene was a "limited fund," issued a preliminary injunction, and certified a limited-fund class pursuant to Fed.R.Civ.P. 23(b)(1)(B).
 
 
 22
 Specifically, the July 1 Order certified five subclasses of claimants and appointed counsel for each subclass. The order also appointed a Special Settlement Master "to facilitate discussions among the parties," and directed that "[s]ettlement discussions should begin immediately." The order enjoined Keene and all class members from continuing or commencing asbestos-related litigation, except for trials already underway. The order also enjoined class members from attempting to collect judgments against Keene or its assets, and forbade Keene to make any payments other than reasonable expenses in operating its business.
 
 
 23
 The Carlisle appellants filed a notice of appeal on July 13, 1993. The Carlisle appellants also moved in the district court to stay proceedings pending the disposition of the appeal. This motion was denied on July 14. The other appellants subsequently filed notices of appeal. On August 10, 1993, we granted Carlisle's motion for a stay of all proceedings and ordered an expedited appeal.
 
 DISCUSSION
 
 24
 Appellants raise a number of challenges to the proceedings below.[1] For our purposes, however, we need consider only whether the action involves a "case" or "controversy" under Article III.
 
 
 25
 Keene, as the party asserting jurisdiction, bears the burden of showing that the case is properly before the court. McNutt v. General Motors Acceptance Corp. of Ind., 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936). Keene has pled facts adequate to invoke the court's diversity jurisdiction under 28 U.S.C. Sec. 1332.[2] However, a court may not exercise subject matter jurisdiction absent compliance with Article III of the Constitution. Article III limits judicial authority to "Cases" and "Controversies." U.S. Const. art. III, Sec. 2. Article III is a limit on judicial power; the existence of a case or controversy is a prerequisite to the exercise of that power. North Carolina v. Rice, 404 U.S. 244, 246, 92 S.Ct. 402, 404, 30 L.Ed.2d 413 (1971); Town of Deerfield, N.Y. v. F.C.C., 992 F.2d 420, 427 (2d Cir.1993).
 
 
 26
 Foremost among elements of the case or controversy requirement is the requirement that the court be presented with a legal claim to adjudicate. As the Supreme Court has explained:
 
 
 27
 Article III of the Constitution limits the "judicial power" of the United States to the resolution of "cases" and "controversies." The constitutional power of federal courts cannot be defined, and indeed has no substance, without reference to the necessity "to adjudge the legal rights of litigants in actual controversies." Liverpool S.S. Co. v. Commissioners of Emigration, 113 U.S. 33, 39, 5 S.Ct. 352, 355, 28 L.Ed. 899 (1885).
 
 
 28
 Valley Forge Christian College v. Americans United for Separation of Church & State, Inc., 454 U.S. 464, 471, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982).
 
 
 29
 A necessary prerequisite to the exercise of judicial power, then, is the presence before a court of a claim of substantive right. Tutun v. United States, 270 U.S. 568, 577, 46 S.Ct. 425, 427, 70 L.Ed. 738 (1926). In other words, the plaintiff's complaint must allege a substantive claim that triggers the court's adjudicative function. Except when a party seeks declaratory relief, the plaintiff must assert that some conduct on the part of the defendants that has caused or is causing actual or threatened injury to the plaintiff that will be remedied or avoided by a determination of liability. Gladstone, Realtors v. Village of Bellwood, 441 U.S. 91, 99, 99 S.Ct. 1601, 1607, 60 L.Ed.2d 66 (1979).
 
 
 30
 As described, most of Keene's complaint recounts its expenditures on asbestos litigation, its current assets, the facts that warrant class certification, and Keene's recommendations for subclasses. Paragraphs 65 through 73, entitled "The Settlement," contain what Keene considers its legal claim. As does the rest of the complaint, and Keene's brief and argument before this court, this portion alleges that a settlement between Keene and a defendant class of asbestos claimants is the most efficient and fairest means of distributing Keene's limited assets and asks for such a settlement as relief. Notably absent from this portion (or any portion of the complaint) is any allegation that any of the defendants are legally harming, or will legally harm, Keene by refusing to settle their asbestos claims.[3] Courts do not have authority to compel parties to settle their cases, see Kothe v. Smith, 771 F.2d 667, 669 (2d Cir.1985), and Keene does not assert that it has a right to a settlement. Indeed, Keene requests in paragraph 73 that the class be de-certified should the parties fail to reach a settlement. There is thus no claim that, if settlement negotiations fail, Keene will be able to prove facts at a trial that would entitle it to relief.
 
 
 31
 Rather than defend the complaint as a whole, Keene seeks to rely on the assertion in one paragraph of the "Relief Sought" section of its complaint that the court should "use its equitable powers to enter a declaratory judgment that Keene is not liable to defendants for any damages that relate to its manufacture and sale of products containing asbestos." However, a request for relief in the form of a declaratory judgment does not by itself establish a case or controversy involving an adjudication of rights. Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671-72, 70 S.Ct. 876, 879-80, 94 L.Ed. 1194 (1950). In fact, the statute authorizing the declaratory judgment remedy explicitly incorporates the Article III case or controversy limitation. See 28 U.S.C. Sec. 2201 (1988) ("In a case of actual controversy within its jurisdiction...."); Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 239-40, 57 S.Ct. 461, 463-64, 81 L.Ed. 617 (1937). The Declaratory Judgment Act does not expand jurisdiction. Skelly Oil, 339 U.S. at 671, 70 S.Ct. at 878. Nor does it provide an independent cause of action. Its operation is procedural only--to provide a form of relief previously unavailable. Aetna Life Ins. Co., 300 U.S. at 240, 57 S.Ct. at 464. Therefore, a court may only enter a declaratory judgment in favor of a party who has a substantive claim of right to such relief.
 
 
 32
 Keene apparently suggests that it should be declared not liable to asbestos claimants on the grounds of res judicata following the settlement it hopes to reach with the defendant class of claimants. The suggestion is of course entirely circular because the existence of the settlement is an essential element entitling Keene to a declaratory judgment of non-liability. The fact that Keene may not be liable to asbestos claimants after reaching a settlement with them does not support a legal claim triggering the court's adjudicative powers when such a settlement has not been reached.
 
 
 33
 In its brief, Keene argues that it seeks a declaration of non-liability based on some unspecified defense to the merits of the asbestos claims. Keene's request, however, is transparently pretextual. It offers no reason why it is not liable to any of the asbestos claimants. Nor, as Keene's counsel admitted at oral argument, does Keene seriously contend that a federal court might validly declare it not liable to the numerous claimant-defendants who have already obtained unexecuted but final judgments against Keene. Moreover, if Keene truly sought a declaratory judgment regarding its asbestos liabilities, Keene would have no reason to ask that the class be de-certified in the event a settlement is not reached.
 
 
 34
 Instead, it is clear that the complaint is an attempt to compel an adjustment of Keene's creditors' rights outside the Bankruptcy Code and is defended almost entirely by the argument that a mandatory class settlement of present or future asbestos claims would be better for all parties than a bankruptcy proceeding. Indeed, the process contemplated by Keene mirrors a bankruptcy proceeding. The finding of a limited fund corresponds to a finding of insolvency. The preliminary injunction serves much the same function as the automatic stay under Section 362(a) of the Bankruptcy Code. 11 U.S.C. Sec. 362(a) (1988). The class representatives correspond to creditors' committees in Chapter 11 proceedings. See 11 U.S.C. Sec. 1102 (1988). The proposed mandatory class settlement mirrors a reorganization plan and "cram-down," see 11 U.S.C. Sec. 1123, 1129(b); In re Johns Manville, 982 F.2d 721, 736 (2d Cir.1992), modified on different grounds, 993 F.2d 7 (2d Cir.1993), followed by a discharge, 11 U.S.C. Sec. 1141(d).
 
 
 35
 Keene's argument is self-defeating, however, because it is a self-evident evasion of the exclusive legal system established by Congress for debtors to seek relief. See In re Johns Manville, 982 F.2d at 735. The adoption of Keene's position would surely lead to further evasion of the Bankruptcy Code as other debtors sought relief in mandatory class actions. Keene argues that such a precedent would be limited to situations, like Keene's, of mass torts in which some plaintiffs are not known at the time of the accident. We are dubious that a limit to unknown plaintiffs is feasible. Under the limited fund theory espoused here, a class representative for a large number of trade creditors might be appointed to seek a settlement on their behalf where a company was deemed to be a limited fund because of insolvency. The argument that the company and its creditors would all be better off in such an action than in bankruptcy would be as plausible in a case involving a large number of contract creditors as it is here. Breach of warranty cases involving numerous purchasers might also fall within the theory.
 
 
 36
 Moreover, even if limited to so-called mass torts with yet unknown plaintiffs, Keene's theory would cover a large number of cases. The use of aggregative techniques and inventive legal theories are causing mass torts to become rather routine. Certainly the theory pressed here would apply to many products liability cases, see, e.g., In re Silicone Gel Breast Implants Prods. Liab. Litig., 793 F.Supp. 1098 (J.P.M.L.1992), environmental torts, see, e.g., In re Love Canal Actions, 92 A.D.2d 416, 460 N.Y.S.2d 850 (App.Div.1983), and even physical disasters. See, e.g., Phillips v. Hallmark Cards, Inc., 722 S.W.2d 86 (Mo.1986) (en banc) (suit by firemen against owner of hotel in which skywalks collapsed for injuries, including emotional distress, sustained while rescuing trapped victims).
 
 
 37
 Evasion of bankruptcy is also not without costs or other perils. The injunction in the instant matter has already prevented execution of final judgments on supersedeas bonds and funds in escrow that are not Keene's assets. Moreover, class members in cases such as this would have no say in the conduct of the court-appointed class representatives and, unlike creditors in bankruptcy, are not able to vote on a settlement. See 11 U.S.C. Sec. 1126. For them, it would be "cram-down" from start to finish. Finally, unlike a lawyer for a creditors' committee, the class representatives in matters like the present one may not be compensated unless a settlement is reached, a situation fraught with danger to the rights of plaintiffs. See In re "Agent Orange" Prod. Liab. Litig., 818 F.2d 216, 222 (2d Cir.), cert. denied, 484 U.S. 926, 108 S.Ct. 289, 98 L.Ed.2d 249 (1987) (Fee arrangement creating incentives to settle without regard to merits is void.).
 
 
 38
 Keene argues passionately that bankruptcy will be a more costly route for the defendant class than this mandatory class action. It may be that the amount distributed to the class in a Keene bankruptcy will be less than in a settlement in the instant class action. Indeed, Keene has suggested that a trial be held on that issue. However, the function of federal courts is not to conduct trials over whether a statutory scheme should be ignored because a more efficient mechanism can be fashioned by judges.
 
 
 39
 In holding that the complaint in this case must be dismissed for lack of subject matter jurisdiction, we recognize that the deficiency of the complaint's substantive allegations may be properly considered on a motion to dismiss for failure to state a claim upon which relief can be granted under Fed.R.Civ.P. 12(b)(6), rather than on a motion to dismiss for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1). See Bell v. Hood, 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946); Baker v. Carr, 369 U.S. 186, 198-200, 82 S.Ct. 691, 700-01, 7 L.Ed.2d 663 (1962). However, granting a dismissal for failure to state a claim upon which relief can be granted presupposes that there is some claim that can be said to be legally deficient. In the present matter, the question is not whether the complaint's claim is legally cognizable, but whether the complaint makes a claim at all. Where, as here, the complaint fairly read fails to make any claim for a judgment against another party but merely seeks to certify a class to enter into settlement negotiations, the matter is properly dismissed for lack of subject matter jurisdiction. Cf. Nayak v. MCA, Inc., 911 F.2d 1082 (5th Cir.1990), cert. denied, 498 U.S. 1087, 111 S.Ct. 962, 112 L.Ed.2d 1049 (1991); State of Michigan v. Meese, 853 F.2d 395, 397 (6th Cir.1988).
 
 CONCLUSION
 
 40
 For these reasons, we vacate the order and preliminary injunction issued by the district court and order dismissal of the complaint for lack of subject matter jurisdiction. The mandate shall issue forthwith.
 
 
 
 *
 The Honorable Milton Pollack, Senior United States District Judge for the Southern District of New York, sitting by designation
 
 
 [1]
 Appellants argue that: (1) the preliminary injunction is preempted under the Supremacy Clause by the Bankruptcy Code; (2) the complaint fails to present a "case" or "controversy" within the meaning of Article III; (3) the preliminary injunction violates the Anti-Injunction Act, 28 U.S.C. Sec. 2283 (1988); (4) the defendant class was improperly certified under Fed.R.Civ.P. 23; (5) personal jurisdiction was not obtained over absent class members; (6) the preliminary injunction denies asbestos claimants Fifth Amendment due process and equal protection rights; (7) the order violates the abstention doctrine; and (8) the preliminary injunction is not supported by the requisite findings under Fed.R.Civ.P. 65
 
 
 [2]
 As noted, Keene has also asserted subject matter jurisdiction under 28 U.S.C. Sec. 1333 (admiralty, maritime and prize) and Sec. 1367 (supplemental). Keene has not explained, nor is it in any way apparent, how this case falls within our jurisdiction over admiralty, maritime, and prize cases. Likewise, the court may not exercise supplemental jurisdiction over claims unless the court has "original jurisdiction" over at least one of the plaintiff's claims. 28 U.S.C. Sec. 1367 (1990 Supp.)
 
 
 [3]
 In fact, even if Keene had a state law claim against creditors that allowed it to adjust the rights of its creditors based on the likelihood of its impending bankruptcy, such a claim might well be preempted by the Bankruptcy Code. See In re Johns-Manville Corp., 982 F.2d 721, 737-39 (2d Cir.1992), modified on different grounds, 993 F.2d 7 (2d Cir.1993); In re Drexel Burnham Lambert Group, Inc., 960 F.2d 285, 292 (2d Cir.1992), cert. dismissed, --- U.S. ----, 113 S.Ct. 1070, 122 L.Ed.2d 497 (1993)