**Elon Emani VALDEZ, an infant by her Mother and Natural Guardian, Tiffany Donely, and Tiffany Donely, Individually Plaintiffs,**

v.

**THE UNITED STATES of America, Defendant.**

**No. 05 CIV. 4842(CM).**

United States District Court, S.D. New York.

Feb. 3, 2006.

take Vitetta's statement down correctly.

Charles Neuville Rock, Rock & Rosmarin, LLP, White Plains, NY, for Plaintiffs.

Heather Kirsten McShain, U.S. Attorney's Office, SDNY, New York, NY, for Defendant.

### MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

MCMAHON, District Judge.

On December 13, 2000, plaintiff Tiffany Donely was admitted to St. Luke's–Roosevelt Hospital ("St.Luke's"), where she delivered her daughter, plaintiff Elon Emani Valdez, by emergency cesarean section performed by Doctor Christina Hye–Kyong Kong ("Dr.Kong"). Prior to delivery, Donely received prenatal care at the William F. Ryan Community Health Center ("Ryan Center"), of which Dr. Kong is an employee.

Hours after the delivery, Elon was diagnosed with respiratory distress secondary to meconium aspiration[1] and transferred

---

1. Meconium refers to the first intestinal discharge of a new born infant which contains mucus and bile. *See* Stedman's Medical Dictionary 1076 (27th Ed.2000). Aspiration is defined as "[t]he inspiratory sucking into the airways of fluid or any foreign material, especially gastric contents or food." *Id.* at 156. Meconium aspiration is defined as the "intrauterine aspiration by the fetus of amniotic

to New York Presbyterian Hospital. Donely both consented to this transfer and "appear[ed] to understand the reasons for the transfer." (*See* McShain Decl. Ex. J; *Id.* Ex. F at 2.)

On January 18, 2001, Elon returned to St. Luke's Neonatal Intensive Care Unit. On January 26, 2001, Donely was notified that her daughter suffered from seizures and bleeding of the brain, causing the brain to atrophy. Elon remained hospitalized for over three months following her birth. She was on a ventilator for approximately two and one-half of those months. Elon was finally discharged from the hospital on March 10, 2001. At the time of her discharge, she had swallowing dysfunction and needed a feeding tube. She was being treated for seizure disorder with Phenobarbital. And she had been diagnosed with brain atrophy.

On February 12, 2002, Donely retained Michael Eidman, Esq., to bring an action against those involved with Elon's birth.

Pursuant to the Public Health Service Act, as amended by the Federally Supported Health Centers Assistance Act of 1995, 42 U.S.C. § 233(g)-(n) (the Act), the employees of any federally supported health center are deemed to be employees of the United States for purposes of bringing civil actions against them for damages resulting from the performance of medical, surgical, dental or related functions. Since a plaintiff must comply with the procedures outlined in the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b), prior to bringing an action against the Government due to the alleged negligence of a covered employee, it is incumbent on counsel to ascertain whether a facility is covered by the Act. Among those requirements is an administrative exhaustion requirement, which contains a

two year statute of limitations (that is, the administrative claim must be filed with the Government no later than two years after the date of the alleged tort). *See* 28 U.S.C. § 2401(b). Eidman was obviously aware of these requirements, because he made efforts to ascertain whether the Ryan Center was a covered facility. He called the Ryan Center and spoke to an unidentified employee, who allegedly told him that the Ryan Center was "a private entity." (Eidman Decl. ¶ 4.) Of course, private entities can be covered institutions under the Act, so this information was of little value. But Eidman also visited the Ryan Center for five minutes to look around for evidence that it might be a covered facility. He allegedly saw none. (Eidman Decl. ¶ 5.)

On or about June 4, 2003—well after the two year period for filing an administrative complaint had expired but just before New York's two and one half year statute of limitations for medical malpractice ran, Donely, on behalf of herself and her daughter, filed a complaint in the Supreme Court, New York County, against Dr. Kong, St. Luke's, and others, but not including the Ryan Center. Plaintiffs claimed that defendants were negligent in providing obstetrical care to Donely, and that, as a result of such negligence, Elon sustained permanent physical injuries.

On September 25, 2003, then United States Attorney James B. Comey certified, pursuant to 38 U.S.C. § 7316(c), 28 U.S.C. § 2679, and 28 C.F.R. § 15.3(a), that Dr. Kong was acting within the scope of her federal employment at the time of the alleged incidents giving rise to the complaint. That certification meant that the FTCA provides the exclusive remedy with respect to the claims asserted against Dr.

fluid contaminated by meconium resulting

from fetal hypoxic shock." *Id.* at 156.

Kong.[2]

On September 30, 2003, the United States removed the state court action to federal court pursuant to 42 U.S.C. § 233(c) and 28 U.S.C. § 2679(d)(2). The United States was substituted as defendant to the extent plaintiffs' claims were against Dr. Kong. On November 21, 2003, plaintiffs' claims against the United States were dismissed without prejudice, pursuant to FED. R. CIV. P. 12(b)(1), because plaintiffs had failed to present an administrative claim to the appropriate federal agency before filing a lawsuit, as required under 28 U.S.C. § 2675(a). The action was remanded to the New York State Supreme Court insofar as it was brought against the non-federal defendants.

Plaintiffs filed an administrative complaint with the Department of Health and Human Services ("HHS") on September 18, 2003.

On December 6, 2004, HHS denied the administrative claim pursuant to 28 U.S.C. § 2401(b) because the claim was presented more than two years after the cause of action accrued. The parties agree that the cause of action accrued on December 13, 2000, the day Elon was born.

Plaintiffs did not appeal the HHS decision. Rather, on May 17, 2005, they filed a complaint in this action.

Defendant filed a motion to dismiss for lack of subject matter jurisdiction pursuant to FED. R. CIV. P. 12(b)(1) on August 2, 2005.

### Standard of Review

In assessing a motion to dismiss for lack of subject matter jurisdiction, a court must "accept as true all material factual allegations in the complaint," *Shipping Fin.*

Serv. Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir.1998) (citing *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)). However, unlike a motion to dismiss for failure to state a claim, the court refrains from "drawing from the pleadings inferences favorable to the party asserting [jurisdiction]." *Id.* (citing *Norton v. Larney,* 266 U.S. 511, 515, 45 S.Ct. 145, 69 L.Ed. 413 (1925)). Courts evaluating Rule 12(b)(1) motions "may resolve the disputed jurisdictional fact issues by reference to evidence outside the pleadings, such as affidavits." *Zappia Middle East Construction Co. Ltd. v. Emirate of Abu Dhabi,* 215 F.3d 247, 253 (2d Cir.2000).

On a motion to dismiss pursuant to Rule 12(b)(1), plaintiff carries the burden of establishing that subject matter jurisdiction exists over the complaint. *See Malik v. Meissner,* 82 F.3d 560, 562 (2d Cir.1996); *In re Joint E. & So. Dist. Asbestos Litig.,* 14 F.3d 726, 730 (2d Cir.1993); *Beacon Enterprises, Inc. v. Menzies,* 715 F.2d 757, 762 (2d Cir.1983).

### Discussion

#### Statute of Limitations

The FTCA clearly requires a plaintiff who asserts a tort claim against the United States to file a written administrative claim with the relevant agency (in this case, the Department of Health and Human Services) within two years of the accrual of the cause of action. If the plaintiff does not do so, the action "shall be barred forever." 28 U.S.C. § 2401(b). The requirements of section 2675(a) extend "to all suits including those begun in state court." *Celestine v. Mount Vernon Neighborhood Health Center,* 403 F.3d 76, 82 (2d

---

**2.** This had no impact on the viability of her state law claims against any defendant other than Dr. Kong.

Cir.2005). The "burden is on the plaintiff to both plead and prove compliance" with the statutory requirement. of timely filing an administrative claim. *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 210, 214 (2d Cir.1987) (citations omitted).

"For purposes of the provisions of 28 U.S.C. 2401(b), 2672, and 2675, a claim shall be deemed to have been presented when a Federal agency receives [the claim] from a claimant." 28 C.F.R. § 14.2(a); *see also Spinale v. United States*, 03 Civ. 1704(KMW)(JCF), 2004 WL 50873, at *10 (S.D.N.Y. Jan. 9, 2004). Here, the administrative claim was received on September 18, 2003, approximately thirty-three months after the claim accrued and well beyond the two year period allowed for filing. Plaintiffs' action against the United States is, therefore, presumptively time-barred.

*Equitable Tolling*

 Plaintiffs contend that I should apply the equitable tolling doctrine. The equitable tolling doctrine is "an extraordinary measure that applies only when plaintiff is prevented from filing despite exercising that level of diligence which could reasonably be expected in the circumstances." *Veltri v. Building Service 32B–J Pension Fund*, 393 F.3d 318, 322 (2d Cir.2004). The FTCA limitations period may be equitably tolled "so long as defendant's concealment of their wrongdoing prevented plaintiff[s] from becoming aware of, or discovering through the exercise of reasonable diligence, [their] cause of action." *Kronisch v. United States*, 150 F.3d 112, 123 (2d Cir.1998).

The evolution of the equitable tolling doctrine in the Federal Tort Claims Act context was tortured. In *Kelley v. United States*, 568 F.2d 259 (2d Cir.1978), the United States Court of Appeals for the Second Circuit ruled that an action could be maintained against the United States—

even if no administrative claim is filed within two years, as required by the FTCA—as long as the individual for whom the United States is substituted as defendant was timely sued in the state court where the action originated. Some years after this ruling, *Kelley* was superceded by a statute known as the Westfall Act, formally known as the Federal Employees Liability Reform and Tort Compensation Act ("Westfall Act"), Pub.L. 100–694, 102 Stat. 4563 (1988). The revised FTCA now provides that state court claims removed to federal court will still be considered timely only if (1) the administrative claim would have been timely had it been filed on the date that the underlying civil action was commenced, and (2) the claim is presented to the relevant Federal administrative agency within sixty days after the dismissal of the civil action. 28 U.S.C. § 2679(d)(5). By giving plaintiffs an opportunity to exhaust administrative remedies after removal and dismissal of a claim against the United States, but conditioning that opportunity on the early filing of the underlying civil action in a state court, the Westfall Act was thought to remedy any unfairness that would accrue to a plaintiff who mistakenly sued the wrong party in the wrong court.

However, in *Celestine v. Mount Vernon Neighborhood Health Center*, 403 F.3d 76, 83 (2d Cir.2005) the Second Circuit noted that the Westfall Act left "unresolved a corollary problem noted in *Kelley*." *Id.* at 84. In *Kelley*, the federally-affiliated defendant who was sued in the state court had misled the plaintiff about his status as a federal employee—indeed, had concealed his status as a federal employee—which meant that the plaintiff did not know and could not have known that the claim should have been presented administratively and then filed against the United States. The Second Circuit concluded

that, "In FTCA suits brought originally in state court by plaintiffs who were *unaware* that the named tortfeasor was acting as an agent of the United States, the reasoning in *Kelley* perdures, and that reasoning may well require equitable tolling in instances where there is a shorter federal statute of limitations, and the difference between these statutes of limitations is determinative of whether the suit can proceed." *Id.* The Second Circuit noted, "Just as it seemed unfair to the *Kelley* court to apply an administrative-exhaustion requirement to a plaintiff who brought suit in state court (*reasonably* thinking it to be the proper venue), it is similarly unjust to treat such a timely state suit as federally barred." *Id.* "Given this and other like possibilities, we cannot say that *Kelley* has been entirely superseded by the Westfall Act." *Id.*

This Court is, of course, bound by *Celestine,* and so, on appropriate facts, I would be constrained to ignore the fact that plaintiffs' claim is clearly barred by the Westfall Act (because the state lawsuit was filed after the expiration of the two year statute of limitations for filing FTCA administrative claims) in favor of equitable tolling. The burden of proving an entitlement to equitable tolling, of course, rests with plaintiffs. The question is whether they have met their burden on the facts of this case.

They have not.

Plaintiffs argue that the FTCA limitations period should be tolled because the defendant fraudulently concealed critical facts that "prevented plaintiff from becoming aware of, or discovering through the exercise of reasonable diligence, his cause of action." *Kronisch v. United States,* 150 F.3d 112, 123 (2d Cir.1998).

■ To make out fraudulent concealment, plaintiffs must show "(1) the wrongful concealment by the defendant of its

actions, (2) the failure by the plaintiff to discover the operative facts underlying the action within the limitations period, and (3) the plaintiff's due diligence to discover the facts." *Donahue v. Pendleton Woolen Mills, Inc.,* 633 F.Supp. 1423, 1443 (S.D.N.Y.1986). "The standard by which a potential FTCA claimant is deemed to have acted with due diligence is one of reasonableness ...." *Bennett ex rel. Estate of Bennett v. F.B.I.,* 278 F.Supp.2d 104, 117 (D.Mass.2003). In other words, plaintiffs must "allege facts showing affirmative conduct upon the part of the defendant which would, under the circumstances of the case, lead a reasonable person to believe that he did not have a claim for relief." *Rutledge v. Boston Woven Hose & Rubber Co.,* 576 F.2d 248, 250 (9th Cir. 1978).

■ Plaintiffs prior attorney, Michael Eidman, called the Ryan Center, asked "whether the [Ryan] Center was a governmental entity or in any way affiliated with one," and was told that the Ryan Center "was a 'private medical clinic' without qualification." (Eidman Decl. ¶ 4.) Eidman also visited the Ryan Center for "five minutes and looked at the signs and bulletin boards to see whether any governmental affiliation was indicated, ... did not speak with anyone," and saw no "signage or postings at the Center indicat[ing] any affiliation with any governmental agency." *Id.* ¶ 5. Furthermore, on February 14, 2002 and June 13, 2002, Eidman requested copies of medical records from the Ryan Center, to which he received no response. *Id.* ¶ 6.

Plaintiffs point to absolutely no facts tending to show that the Ryan Center made any effort to conceal its status as a covered institution. Certainly, plaintiffs' evidence about Eidman's phone call is insufficient. Plaintiffs do not even identify

the person who allegedly told Eidman that Ryan was a private institution. For all this court knows, Eidman posed his question to a telephone operator or secretary, who would be in no position to understand the import of the question or know the highly technical answer, and whose erroneous response could not be interpreted as "covering up" the institution's status. Reliance on such a person would be manifestly unreasonable. Moreover, the fact that an institution is "private" does not prevent it from being a government funded institution within the meaning of the Act. Plaintiffs do not indicate that Eidman posed any follow-up questions to clarify the situation or obtain clarification of the answer.

Nor, frankly, does Eidman's telephone call qualify as "due diligence." It would be a reasonable effort if he had posed his question to anyone who would likely be in a position to know—a chief administrative or financial officer, for example. But it does not appear that he did any such thing.

Eidman followed up his phone call with a brief (five minute) visit to the Ryan Center. There is no evidence that he talked to anyone to ascertain the institution's status under the Act, let alone that anyone refused to disclose the institution's status to him. Instead, he visited the front entrance area of the Center and looked for signs or bulletin board postings that might indicate the Center's federal affiliation. The fact that no such signs were posted in that area does not amount to fraudulent concealment.

The fact that Eidman's request for medical records went unanswered is also not evidence of concealment. There is no indication in this record that production of the records would have yielded information about the Center's status under the Act. Moreover, it was not reasonable for an attorney who has been retained to bring a malpractice action not to follow up when a request for records was neither allowed nor denied.

Of course, Eidman is not the lawyer who commenced the lawsuit. There is no indication in this record when Eidman was fired and current counsel retained. There is nothing in the record to indicate that counsel of record took any steps to ascertain whether the Center and its employees were covered by the Act, other than rely on the manifestly inadequate steps taken by Eidman.

In short, plaintiffs have not proved concealment; they have not proved reasonable reliance, and they have not proved that they engaged in due diligence. On every score, it would be inappropriate to apply equitable tolling to the facts of this case.

*Conclusion*

For the foregoing reasons Defendant's motion to dismiss is granted.

This constitutes the decision and order of the Court.