**In re 680 FIFTH AVENUE ASSOCIATES and 54th and Fifth Land Partners, Reorganized Debtors.**

**680 FIFTH AVENUE ASSOCIATES, on its own behalf and as successor-in-interest to 54th and Fifth Land Partners, Plaintiff,**

**v.**

**EGI COMPANY SERVICES INC., Engadine Holdings Inc., 54th Estate Corp., 680 Realty Partners and HFA Investor Services, Inc., Defendants.**

**EGI COMPANY SERVICES INC., Engadine Holdings Inc., 54th Estate Corp., 680 Realty Partners and HFA Investor Services, Inc., Counterclaimants and Third Party Plaintiffs,**

**v.**

**680 FIFTH AVENUE ASSOCIATES, Counterclaim Defendant,**

**and**

**Lodz Properties, L.P., Hensel Fifth Avenue Associates, L.P., Hensel 680 Realty Corp., Farrell C. Glasser, J. Michael Broumas, and Ober, Kaler, Grimes & Shriver, Steven L. Green, and S.L. Green Real Estate, Inc., Third Party Defendants.**

**Bankruptcy Nos. 92 B 44734 (TLB), 92 B 44735 (TLB).**

**Adversary No. 95–1395A.**

United States Bankruptcy Court, S.D. New York.

June 10, 1997.

As Corrected June 30, 1997.

---

Hahn & Hessen by Jeffrey L. Schwartz, Joshua I. Divack, New York City, for Reorganized Debtor.

Brown, Raysman & Millstein, LLP by Kenneth M. Block, New York City, for Hensel Fifth Avenue Associates L.P., Hensel 680 Realty Corp., Stephen L. Green, and S.L. Green Management Corp.

Walter, Conston, Alexander & Green, P.C. by Paul H. Silverman, New York City, for Lodz Properties, L.P.

Flemming, Zulack & Williamson, LLP by Gerald G. Paul, New York City, for Farrell C. Glasser, J. Michael Broumas, Ober, Kaler, Grimes & Shriver.

Ross & Hardies by Marshall Biel, Kathryn C. Spann, New York City, for EGI Company Services Inc., Engadine Holdings Inc., 54th Estate Corp., 680 Realty Partners, and HFA Investor Services, Inc.

OPINION GRANTING MOTION OF THIRD PARTY DEFENDANTS TO DISMISS COUNTERCLAIM AND THIRD PARTY COMPLAINT OF COUNTERCLAIMANTS

TINA L. BROZMAN, Chief Judge.

680 Fifth Avenue Associates and 54th and Fifth Land Partners are two former chapter 11 debtors controlled prior to emergence from that chapter by one Edward Strasser. Freed from Strasser's control through confirmation of a plan of reorganization, the surviving reorganized debtor,[1] 680 Fifth Avenue Associates, has objected to almost $2 million in previously undisclosed claims of entities controlled by Strasser (the "Strasser claimants"). Joined with the objections to the claims were causes of action against the Strasser claimants and other en-

---

**1.** 54th and Fifth Land Partners was merged into its sister corporation upon emergence from chapter 11.

tities as well as Strasser himself. After the defendants moved to both amend their answer and dismiss certain claims in the complaint, the reorganized debtor dropped the claims against Strasser and others, but does still assert that the lease pursuant to which the Strasser claimants occupy space in the reorganized debtor's premises is void and that the Strasser claimants are liable for use and occupancy charges.

In response to the attack on their claims, the defendants counterclaimed and commenced a. third party action sounding in fraud bottomed on their contention that had the plan proponents for the confirmed plan (the "McNamee Plan") revealed certain information to the limited partners of the debtors, the limited partners would have voted in favor of the debtors' competing plan, which would have been confirmed. The flaws with this counterclaim and third party complaint, which the reorganized debtor and the third party defendants now move to dismiss, are fatal: I refused to confirm the debtors' plan based, not on the voting outcome, but on the debtors' failure (for three years) to obtain the requisite funding to permit confirmation. The Debtors did not appeal from this ruling, and indeed, **withdrew** their objections to the McNamee Plan's confirmation.

When Strasser withdrew the debtors' objections to the McNamee Plan, I had hoped that he was graciously conceding that although he had been given ample opportunity to confirm a plan to the liking of the creditors and the limited partners, he had failed. It is apparent, however, that the enmity which plagued the proceedings has only been fueled by Strasser's removal such that his affiliates have interposed previously-undisclosed major administrative claims and he now is attempting to recover damages for my refusal to confirm a plan for which he had no financing. Lest my criticism be seen to imply that Strasser alone has been mean-spirited, I note that he has had the good company of the reorganized debtor, which came to its senses only when its new counsel filed an

amended complaint. Strasser, too, has new counsel, but they have only fanned the flames, notwithstanding the amendment of the complaint.

What follows are the background facts (drawn from the complaint, counterclaim and third party complaint as well as the record before me) and my reasons for dismissing the counterclaim and third party complaint with prejudice.

### I.

### A.  The Procedural Background

On April 21, 1992, 54th and Fifth Land Partners, the owner of real property located at 680 Fifth Avenue in Manhattan, and 680 Fifth Avenue Associates (54th and Fifth Land Partners and 680 Fifth Avenue Associates are collectively referred to as the "Debtors"), the owner and operator of the 27 story commercial office building located at that address, filed their voluntary chapter 11 petitions.

In 1987, Edward M. Strasser had assumed control over the Debtors' operations and management. He is the president of 54 Estate Corporation, which was the general partner of 54th and Fifth Land Partners, and the president of CRC Realty Capital Corp., the sole general partner of 680 Realty Partners, one of the defendants and itself the general partner of 680 Fifth Avenue Associates.

As their reorganization cases progressed, the Debtors had difficulty in mustering support for their plan proposals. Growing increasingly restless, a group of the limited partners (the "McNamee Group") banded together to attempt to oust 680 Realty Partners (and by extension, Strasser) as the Debtor's general partner. After a period of litigation, the parties eventually reached a truce whereby the Debtors permitted the McNamee Group[2] to file its own plan of reorganization in competition with the Debtors' in return for terminating the litigation.

---

2.  Over the course of time, the members of the McNamee Group changed, with the group increasing the number of limited partners who were represented by its counsel. Because the actual identities of the members of the group at any particular time is not relevant to the pending motions, for simplicity's sake I will refer to the limited partners who sought to remove Strasser and those who filed a plan as the "McNamee Group."

Later efforts at mediating the remaining disputes between the parties were fruitless.

On March 9, 1995, the McNamee Group filed its 6th Amended Joint Plan of Reorganization (the "McNamee Plan"). This plan granted a redemption option to 680 Fifth Avenue Associates entitling it to redeem all of the limited partnership interests for up to 15 years after the plan's effective date and provided that it pay the limited partners $7.5 million for their interests if the option were exercised in the first 5 years, $5 million during the next 5 years, or $1.5 million in the tenth year, increasing by $65,000 for each of the next 5 years up to $1.825 million at the fifteenth year anniversary, at which time the option expires. The McNamee Plan required the reorganized debtor to exercise this option if certain events taxable to the limited partners occurred, such as a sale of the property, foreclosure by the secured lenders, or refinancing of the secured debt. The option was designed so that limited partners would receive a cash distribution to help defray any tax liability that might arise as a result of the occurrence of one of those events.

About two weeks later, on March 27, 1995, the Debtors filed their 6th amended joint plan (the "Debtors' Plan") and disclosure statement.

On April 19, 1995, I conducted a hearing on the adequacy of information provided in both the McNamee Group's and the Debtors' proposed disclosure statements. Each group of proponents filed written objections to the other's disclosure statement. After I had ruled on numerous issues, both proponents submitted modified disclosure statements for my approval. On May 3, 1995, I entered separate orders approving the respective disclosure statements and establishing voting procedures for the solicitation of acceptances from creditors to the competing plans. Neither of these orders was contested through requests either for leave to appeal or for a rehearing.

On July 12, 1995, I held a confirmation hearing to consider the two plans. The Debtors and the McNamee Group filed written objections to confirmation of each other's plan. The Debtors' Plan was the first to be evaluated. Because after more than three years of sojourn in chapter 11 the Debtors still did not have the necessary financing in place to execute the plan, I denied its confirmation, finding the plan was not feasible. I also denied the Debtors' request for an adjournment to continue to seek financing.

I then turned my attention to the McNamee Plan. After receiving an offer of proof from its proponents and a statement from the Debtors that they would not oppose it, I approved the McNamee Plan. On July 20, 1995, I entered an order of confirmation which became final and nonappealable on July 31, 1995.

On August 31, 1995, the McNamee Plan became effective; 680 Fifth Avenue Associates as the reorganized debtor became vested with the property of the former Debtors. Accordingly, any interests of the Debtors' general partners in the Debtors' property were canceled; consequently, Strasser was removed from control and management.

On August 18, 1995, 680 Realty Partners, 54th Estate Corporation, EGI Company Services Inc. and HFA Investor Services, Inc. (the previously-identified Strasser claimants) filed administrative claims for services rendered to the Debtors during the bankruptcy proceeding in the approximate aggregate amount of $1.955 million. On November 30, 1995, the Strasser claimants filed supplemental claims which increased these administrative claims and asserted $4.2 million in additional general unsecured claims (the "Strasser claims").[3] Neither the existence nor the magnitude of the Strasser claims was disclosed in the Debtors' disclosure statement. Not having appeared in the Debtors' submission, the claims' omission from the McNamee Plan's disclosure state-

**3.** The current breakdown of these claims is:

| | | |
|---|---|---|
| HFA Investor Services, Inc. | $ 393,748.08 administrative | |
| EGI Company Services, Inc. | $1,257,554.80 administrative | |
| 54th Estate Corporation | $ 87,369.86 administrative | $1,125,000.00 general unsecured |
| 680 Realty Partners | $ 216,424.66 administrative | $3,075,000.00 general unsecured |

ment comes as no surprise, the McNamee Group apparently being ignorant of their existence.

On October 31, 1995, the reorganized debtor filed a complaint (the "Original Complaint") objecting to the Strasser claims and asserting a number of other causes of action against the four Strasser claimants as well as five other defendants including Strasser himself, Engadine Holdings, Inc., CRC Realty Capital Corp., HC Financial Service, and Emstra Realty, Inc. (collectively the "Strasser Defendants"). On January 19, 1996, the Strasser Defendants answered the complaint, asserting a number of affirmative defenses including the expiration of the statute of limitations.

On February 27, 1996, the Strasser Defendants filed motions for partial summary judgment and for leave to amend their answer to assert third party claims against 680 Fifth Avenue and the other third party defendants. They requested both damages and equitable relief, including injunctive relief, revocation of the confirmation order and resolicitation of creditors to vote on a new plan supported by the Debtors.

Sometime afterward, 680 Fifth Avenue replaced Strasburger & Price and Kensington & Ressler with the firm of Hahn & Hessen as its post-confirmation bankruptcy counsel. New counsel served an amended complaint that modified the relief requested in the Original Complaint and completely abandoned claims against four defendants including Strasser (the "Amended Complaint").

On June 10, 1996, the Strasser Defendants filed their answer to the Amended Complaint together with a counterclaim against the reorganized debtor and a complaint against the third party defendants. In addition to the reorganized debtor, the third party defendants consist of the law firm of Ober, Kaler, Grimes & Shriver, counsel to the McNamee Group, and two of that firm's current or former members, Farrell C. Glasser and J. Michael Broumas (collectively, "Ober Kaler"); Lodz Properties, L.P. ("Lodz"), the assignee of the senior note and mortgage encumbering the building and the senior secured lender of the reorganized debtor; Hensel Fifth Avenue Associates,

L.P., the general partner of the reorganized debtor, and Hensel 680 Realty Corp., the general partner of Hensel Fifth Avenue Associates, L.P. (collectively, "Hensel"); and S.L. Green Real Estate Inc., the manager of the reorganized debtor, and its principal Steven L. Green (collectively, "Green"), who is also the president of Hensel 680 Realty Corp. Each of these parties has responded to the counterclaim with a motion to dismiss.

On June 11, 1996, the Strasser Defendants filed a motion seeking sanctions against the reorganized debtor and its former counsel based on certain allegations made in the Original Complaint. That motion will be the subject of a separate decision.

### B. The Debtors' Acquisition of the Property; The Oak Tree Note

The Debtors acquired their respective interests in the land and building at 680 Fifth Avenue through a series of transactions. On November 7, 1983, 680–54 Corp., an entity unrelated to the Debtors, acquired the property from Mutual Benefit Life Insurance Company pursuant to a contract of sale dated August 5, 1983. The purchase price was $50 million payable by (i) a $1.5 million cash down payment, (ii) $8.5 million in cash at the closing, and (iii) delivery of a $40 million note secured by a purchase money mortgage and assignment of rents. At the time it acquired the property, 680–54 Corp. executed a purchase money note in the principal amount of $40 million in favor of Mutual Benefit and issued a purchase money mortgage with respect to the property to secure the indebtedness under that note.

Oak Tree Properties, Inc. ("Oak Tree"), whose general partner was previously an affiliate of Strasser and of the Debtors, acquired the building, but not the land, from 680–54 Corp. for approximately $40.52 million by paying approximately $520,000 in cash and assuming the $40 million mortgage of 680–54 Corp.

680 Fifth Avenue Associates then acquired the building from Oak Tree for $40.5 million, paying $500,000 in cash and executing and delivering to Oak Tree a purchase money note in the principal amount of $40

million (the "Oak Tree Note") secured by a wrap-around mortgage for this balance. Meanwhile, 54th and Fifth Land Partners acquired the underlying land by paying the sum of $9.505 million in cash. As a result, the Debtors now had possession of both the land and the building subject to the 680–54 Corp. mortgage.

The Oak Tree mortgage is inclusive of and subordinate to the 680–54 mortgage, bears interest at an annual rate of no less than 15% and is for a term of 15 years from the date of the acquisition of the building. The mortgage provides that in the event cash flow is insufficient to enable 680 Fifth Avenue Associates to pay the full amount of accrued interest in any given year, payment of the deficiency can be deferred until maturity of the Oak Tree mortgage. As of the petition date, the Oak Tree Note was outstanding in an amount in excess of $100 million.[4]

### C. The Allegations of the Counterclaim

In their counterclaim, the Strasser Defendants contend that a complex fraud was perpetrated by the McNamee Group which prevented the Debtors from confirming their plan. Specifically, the counterclaim alleges that the McNamee Group failed to disclose during the plan process the truth about the reorganized debtor's intent to challenge the Oak Tree Note as a fraudulent conveyance after confirmation of the plan. According to the Strasser Defendants, if in fact the Oak Tree Note had been avoided, catastrophic tax consequences would have ensued for the limited partners and the Debtors' former general partners. If these parties had been armed with the knowledge that the fraudulent transfer claim would be brought, the Strasser Defendants continue, the limited partners never would have voted for the McNamee Plan and would have switched their allegiance to the Debtors' Plan. The Strasser Defendants state that they could not have brought this claim to the attention of the court sooner because they did not have any knowledge of this scheme until the reorganized debtor revealed its true intentions by filing the Original Complaint, which contained a cause of action based on the avoidance of the Oak Tree Note. Accordingly, the Strasser Defendants conclude, if the disclosures had been made which they assert should have been made by the McNamee Group, the Debtors' Plan, and not the McNamee Plan, would have been confirmed instead. As a result, the Strasser Defendants say, they have suffered the economic injury of being ousted from ownership and control of the building, the rejection of leases and contracts, the vesting of property interests in a new entity, and the objections to their administrative claims.

### II.

■ The reorganized debtor and the third party defendants[5] move for dismissal of the Strasser Defendants' counterclaim[6] on two grounds under Fed.R.Civ.P. 12(b). First, the reorganized debtor argues that under Rule 12(b)(1) this court lacks subject matter jurisdiction because the Strasser Defendants have either failed to allege a cognizable injury at law or brought claims that are unripe. Second, the reorganized debtor contends that under Rule 12(b)(6) the Strasser Defendants have failed to state a claim because the Debtors, with whom they share privity, are collaterally estopped from relitigating issues regarding the alleged failures of disclosure and concomitant impropriety of the plan solicitation process. Further, they argue, *res judi-*

---

4. Both the McNamee Group and the reorganized debtor have intimated that the *bona fides* of the Oak Tree transaction may be suspect. In their disclosure statement, the McNamee Group disclose the fact that Oak Tree did not appear as an owner in the chain of title of ownership of the building. Disc.Stmt. at p. 24. In the original complaint which commenced this adversary proceeding, the reorganized debtor alleged that the Oak Tree note was a fraudulent conveyance which would enable the reorganized debtor to obtain a recovery against the Strasser defendants as mediate transferees under the note. Oct. 31, 1995 Complaint at pp. 6–7, 10. The reorganized debtor deleted such allegations in its amended complaint dated May 9, 1996.

5. Because the reorganized debtor assumed the laboring oar in arguing the merits of the motion to dismiss, my use of the term, "reorganized debtor," should hereafter be understood to include the third party defendants unless otherwise indicated.

6. For the sake of convenience, I will refer to the Strasser claimants' *Answer to Amended Complaint and Counterclaim—Third Party Complaint,* dated July 12, 1996, as "counterclaim."

*cata* also precludes the Strasser Defendants from pursuing their claims because the Debtors previously raised the issues regarding full and proper disclosure at the disclosure statement hearing and then waived them at the confirmation hearing. Accordingly, the reorganized debtor advances the position that I should dismiss the counterclaim and third party complaint on either 12(b)(1) or 12(b)(6) grounds.

The Strasser Defendants respond that their counterclaim depicts the fraudulent behavior of the McNamee Group that fatally infected the plan process and led to the defeat of the Debtors' Plan. They contend that because these allegations about the plan process are new, they are sufficient to withstand dismissal. As for injury, the Strasser Defendants maintain that the defeat of the Debtors' Plan resulting from the fraud committed by the McNamee Group caused the Strasser Defendants to suffer a host of economic losses described earlier.

In addition to joining the reorganized debtor's motion to dismiss the counterclaim on jurisdictional grounds, certain of the third party defendants have interposed their own independent defenses to the counterclaim. The Hensel and Green defendants say the counterclaim fails to state a direct or third party claim against them. Lodz alleges that the court has not achieved personal jurisdiction over it because of improper service. The Strasser Defendants have also pleaded a fraud claim against Ober Kaler in their counterclaim. Ober Kaler seeks dismissal of this claim on the grounds that the Strasser Defendants did not plead fraud with the required particularity. Because of my conclusion that the counterclaim cannot survive the Reorganized Debtor's motion to dismiss on constitutional grounds, I will not address the balance of these third parties' contentions.

## III.

### A. *Motion to Dismiss under Federal Rule 12(b)(1)*

A motion to dismiss under Fed.R.Civ.P. 12(b)(1),[7] made applicable to these proceedings by Bankruptcy Rule 7012, allows a court to dismiss a complaint or counterclaim where the court has no subject matter jurisdiction. Unlike a motion under Rule 12(b)(6), it is not an adjudication on the merits and is not accorded *res judicata* effect. *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir.1996). Where a complaint fairly read fails to make any claim for judgment against another party contrary to Article III's "case or controversy" requirement, it is properly dismissed for lack of subject matter jurisdiction. *See Keene Corp. v. Fiorelli (In re Joint Eastern & Southern Dist. Asbestos Litig.)*, 14 F.3d 726, 733 (2d Cir.1993); *19 Court St. Assocs., LLC v. Resolution Trust Corp. (In re 19 Court St. Assocs., LLC)*,, 190 B.R. 983, 995 (Bankr.S.D.N.Y.1996) (complaint is to be viewed liberally and the court is to accept as true all material facts alleged therein); *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 22–23 (2d Cir.1990) (same). If subject matter jurisdiction is at issue, the court may consider evidence presented by affidavit or otherwise. *Kamen v. American Telephone & Telegraph*, 791 F.2d 1006, 1011 (2d Cir.1986); *Exchange Nat'l Bank v. Touche Ross & Co.*, 544 F.2d 1126, 1131 (2d Cir.1976), *modified on other grounds*, 726 F.2d 930 (2d Cir.1984), *cert. denied*, 469 U.S. 884, 105 S.Ct. 253, 83 L.Ed.2d 190 (1984). The court may consider matters outside of the pleadings without converting a Rule 12(b)(1) motion into one for summary judgment. *19 Court St. Assocs.*, 190 B.R. at 995 (citing *Merola v. National R.R. Passenger Corp.*, 683 F.Supp. 935, 937 (S.D.N.Y.1988)).

A court should grant a motion to dismiss under Rule 12(b)(1) only if " 'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.' " *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 249–50, 109 S.Ct. 2893, 2906, 106 L.Ed.2d 195 (1989) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984)).

7.  Fed.R.Civ.P. 12(b)(1) provides: Every defense, in law or fact, to a claim for relief in any pleading, whether a counterclaim ... or third party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader by made by motion: (i) lack of jurisdiction over the subject matter ...

Finally, the party seeking to invoke the court's jurisdiction has the burden of establishing subject matter jurisdiction. *Atlantic Mutual Ins. Co. v. Balfour Maclaine Int'l, Ltd.*, 775 F.Supp. 101, 104 (S.D.N.Y.1991), *aff'd*, 968 F.2d 196 (2d Cir.1992).

The reorganized debtor generally denies the allegations of the Strasser Defendants' counterclaim that the third party defendants have all participated in a complex fraud on this court and the estate's creditors. In addition, the reorganized debtor responds that any cognizable injury which the Strasser Defendants allege they have suffered is not concrete, but only hypothetical and speculative. As a matter of law, it says, the Strasser Defendants' alleged injuries do not meet the constitutional requirement of an injury in fact, and therefore the reorganized debtor urges that this court does not have subject matter jurisdiction over the counterclaim.

The Constitution confines the judicial power of the federal courts to deciding cases or controversies. U.S. Const. art. III, § 2, cl. 1. The constitutional component of standing contains three elements: (i) the plaintiff must have sustained an "injury in fact," which means that a legally-protected interest must have been actually invaded in a concrete and particularized manner; (ii) the injury must be traceable to the defendant's conduct; i.e. there must be a causal connection; and (iii) a ruling in favor of the plaintiff must redress the injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992); *19 Court St. Assocs.*, 190 B.R. at 991. "A plaintiff must always have suffered a 'distinct and palpable injury to himself.' The injury must be 'concrete in nature and particularized to the plaintiff,' and not 'abstract,' 'conjectural,' or 'hypothetical.'" *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1091 (2d Cir.1995) (citing cases).

The Strasser Defendants do not plead their counterclaim in an easily discernible fashion, laying out instead of concise claims for relief a long narration of the fraudulent acts they attribute to the reorganized debtor and the other third party defendants. Nonetheless, the entire counterclaim revolves around one asserted omission of the defendants, their failure to disclose their intent to challenge the Oak Tree Note, leading to the following two consequences:

(1) Had the third party defendants made complete and proper disclosures regarding their intention to challenge the Oak Tree Note as a fraudulent conveyance, then the limited partners would have recognized as a sham the redemption option, a keystone provision of the McNamee Plan that was promoted as a form of financial compensation and protection to the limited partners to minimize potential adverse tax consequences from a sale or foreclosure of the building. As a result, the limited partners would have rejected the McNamee Plan, the Debtors' Plan would have received the requisite votes from the limited partners, and the Debtors' Plan would have been confirmed.[8] Counterclaim, ¶ 92.

(2) The challenge to the Oak Tree Note contained in the Original Complaint could expose the limited partners and the Debtors' former general partners to potentially severe, adverse action by the Internal Revenue Service and other tax agencies, including the need to file

8. A disclosure statement is a critical step in the reorganization process, and the importance of full disclosure is underlaid by the reliance placed upon it by the creditors and the court. While I do not reach the issue, there is a serious question as to whether the Reorganized Debtor could actually bring an action to avoid the Oak Tree Note as a fraudulent conveyance without running afoul of the doctrines of *res judicata* or judicial estoppel for failing to disclose such a potential cause of action even in light of the fact that the disclosure statement did provide general notice that such claims might be pursued postconfirmation. *McNamee Limited Partners Sixth Amended Disclosure Statement pertaining to the McNamee Limited Partners' Sixth Amended Joint Plan of Reorganization*, Article XVII, section N. at p. 77. *See, e.g., Bonwit Teller, Inc. v. Jewelmasters, Inc. (In re Hooker Investments, Inc.)*, 162 B.R. 426, 433–34 (Bankr.S.D.N.Y.1993) (express reservation of cause of action escapes *res judicata* bar); *Galerie Des Monnaies of Geneva v. Deutsche Bank*, 55 B.R. 253 (Bankr.S.D.N.Y.1985), *aff'd*, 62 B.R. 224, 225 (S.D.N.Y.1986) (debtor's complaint against bank for preference dismissed); *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 417 (3d Cir.), *cert. denied*, 488 U.S., 967, 109 S.Ct. 495, 102 L.Ed.2d 532 (1988) (debtor's complaint against bank for breach of contract and misrepresentation dismissed).

322

amended tax returns that would likely lead to the imposition of substantial tax assessments on the partners. Counterclaim, ¶ 79.

I will deal with each of these in turn.

Under a Rule 12(b)(1) analysis, the first claim cannot survive dismissal for two reasons. Even were I to find that the Strasser Defendants correctly assert that the McNamee Group failed to disclose their intentions regarding the Oak Tree Note, there is no demonstrated causal connection between this alleged nondisclosure and the Strasser Defendants' "injury," the failure of the Debtors' Plan to be confirmed. For the Strasser Defendants overlook a basic fact: the Debtors' Plan could not pass the threshold test of feasibility. At the confirmation hearing, I initially addressed the confirmability of the Debtors' Plan. The Debtors failed to demonstrate that their plan was feasible because they had been unable to locate any source of financing to fund it. I denied their request for an adjournment to seek financing because they had already had nearly three years to do so: "The case has been in this Court for what can only be described as an astoundingly long period of time for a single asset real estate case. I have given the Debtor probably longer to try to come up with a confirmable plan than any other single asset case that I have ever had." *Confirmation Hrg.,* July 12, 1995, Tr. at p. 23. A few moments later, I stated in the plainest language possible, "Let me make it clear in case it was not clear before, that I have effectively denied the confirmation of the Debtors' plan because the Debtor is not able to prove it has the means by which to execute the plan." *Confirmation Hrg.,* Tr. at pp. 25–26. In other words, the Debtors' Plan was patently unconfirmable. Despite garnering the votes which were a predicate to confirmation of their plan, the Debtors' Plan still would have failed because there was no funding in place to effectuate it. Significantly, it was not until I had ruled on the confirmability of the Debtors' Plan that I turned to the McNamee Plan.

After the McNamee Group offered its proof in support of confirmation, the Debtors decided not to pursue their objection to the McNamee Plan. *Confirmation Hrg.,* Tr. at p.

28. I thereupon found the McNamee Plan to be confirmable. But had I not so found or had the McNamee Group fraudulently obtained a confirmation order, there is simply no causal connection between that alleged fraud and the failure of the Debtors to have their plan confirmed. Therefore, the Strasser Defendants do not meet the second element to avoid dismissal under Rule 12(b)(1), that the injury be traceable to the defendant's conduct, any injury they suffered having been due to their own inability to obtain financial backing for their plan so as to meet the statutory requirements for confirmation. This causation was independent of and unrelated to what transpired regarding the McNamee Plan.

In addition, the Strasser Defendants' claim also fails regarding the third prong, because were I to rule in their favor, I cannot redress their alleged injury. The Strasser Defendants argue that the McNamee Group's intent to avoid the Oak Tree Note, hidden from the parties that would be harmed if the note were invalidated—the limited partners and the Debtors—demonstrated that the redemption option was a sham and led to the McNamee Plan being confirmed instead of the Debtors' Plan. As a result, the Strasser Defendants claim to have suffered a series of economic injuries resulting from being ousted from control of the Debtors.

But the Debtors' Plan was unconfirmable. So I could not simply reverse my rulings and reinstall Strasser. Strasser suggests that resolicitation could occur respecting a new plan that he could propose. But if he could propose a new plan, so could others.

Section 1144 of the Bankruptcy Code governs revocation of a confirmation order and provides in pertinent part:

On request of a party in interest at any time before 180 days after the date of the entry of the order of confirmation, and after notice and a hearing, the court may revoke such order if and only if such order was procured by fraud.

■ This section contains a short six-month window. Courts strictly construe this 180 day time limitation, applying it even if a fraud is discovered beyond that deadline. *In*

re Crown–Globe, Inc., 107 B.R. 60, 62 (Bankr. E.D.Pa.1989); In re Cinderella Clothing Indus., Inc., 93 B.R. 373 (Bankr.E.D.Pa.1988). See also, In re Chipwich, Inc., 64 B.R. 670 (Bankr.S.D.N.Y.1986); In re Air One, Inc., 75 B.R. 1003, 1005 (Bankr.E.D.Mo.1987); In re Doty, 129 B.R. 571, 586 (Bankr.N.D.Ind. 1991). See B.R. 9024 (making Fed.R.Civ.P. 60 applicable to bankruptcy proceedings but explicitly providing that, "Rule 60 . . . applies in cases under the Code . . . except that a complaint to revoke an order confirming a plan may be filed only within the time allowed by § 1144"). S.N. Phelps & Co. v. The Circle K Corp. (In re Circle K Corp.), 171 B.R. 666, 668 (Bankr.D.Ariz.1994). Consequently, any opportunity for the Strasser Defendants (or any other party) to seek to revoke the McNamee Plan expired on January 16, 1996, 180 days after the plan was confirmed on July 20, 1995. The Strasser Defendants filed their counterclaim on February 25, 1996, weeks after the deadline passed. Although the Strasser Defendants claim that they only learned of the alleged fraud of the third party defendants through the interposition of the Original Complaint after the § 1144 deadline had passed, this does not give them any opportunity for relief because the usually accepted "discovery of the fraud" exceptions to a limitations period are not available to late confirmation challenges. See In re Mission Hts. Investors L.P., 202 B.R. 131, 138 (Bankr.D.Ariz.1996); Crown–Globe, Inc., 107 B.R. 60. In any event, were section 1144 no bar to revocation of the confirmed plan, I believe that revocation would fail on the grounds of mootness because I would be unable to fashion any effective relief.[9]

As for the second potential source of injury suffered by the Strasser Defendants, the potential adverse tax consequences for the limited partners and former corporate partners, the Strasser Defendants complain they have been injured by the pleading of certain causes of action in the Original Complaint which since have been withdrawn by the Amended Complaint.[10] Typically, such a counterclaim would be doomed to fail because ordinarily, an amended complaint, after it has been properly served, supersedes the original and renders it of no legal effect. International Controls Corp. v. Vesco, 556 F.2d 665, 669 (2d Cir.1977), cert. denied, 434 U.S. 1014, 98 S.Ct. 730, 54 L.Ed.2d 758 (1978). See also Prymer v. Ogden, 29 F.3d 1208, 1215 n. 6 (7th Cir.), cert. denied, 513 U.S. 1057, 115 S.Ct. 665, 130 L.Ed.2d 599 (1994) (calling this proposition well established).

However, the Strasser Defendants have sought to articulate a more sophisticated fear, that simply by virtue of alleging that the Oak Tree Note might be avoidable, the Reorganized Debtor has publicly raised, intentionally or not, a "red flag" inviting the appropriate taxing authorities to investigate whether the Debtors actually lacked economic validity from their inception. If such allegations were found to have merit, the Stras-

9. In two recent cases involving chapter 11 reorganizations, parties filed timely complaints to revoke the confirmation orders based on allegations of fraudulent conduct by the reorganized debtor during the plan process. S.N. Phelps & Co. v. The Circle K Corp. (In re Circle K Corp.), 171 B.R. 666 (Bankr.D.Ariz.1994); Chang v. Servico, Inc. (In re Servico, Inc.), 161 B.R. 297 (S.D.Fla.1993). In both instances, the courts held that because the objectants had failed to stay the confirmation orders and because the plans in question had been substantially consummated by virtue of the transfer of properties and commencement of distributions to creditors, the courts as a practical matter could not undo these transactions to restore the status quo prior to confirmation. As a result, the courts could not grant the movants any effective relief and dismissed their actions to revoke confirmation as moot. Here in this case, at confirmation, the Debtors' properties were transferred to and vest-

ed in the reorganized debtor, itself a newly organized entity unrelated to the previous owners, a new managing agent was installed at the building, and new financing was obtained; distributions to creditors commenced shortly thereafter. Like the Circle K and Servico courts, under such circumstances I would be unable to fashion any relief to the Strasser Defendants to undo these transactions.

10. For purposes of this analysis, I will accept as true the claim by the Strasser Defendants that the reorganized debtor sought a finding in the Original Complaint that the Oak Tree Note is avoidable as a fraudulent conveyance. I acknowledge that the reorganized debtor vigorously disputes this characterization of this claim, maintaining that the cause of action makes out nothing more than a claim for breach of fiduciary duty by Strasser.

ser Defendants say, the Reorganized Debtor would need to file amended tax returns, and the ensuing investigations by the Internal Revenue Service and other tax authorities ultimately would lead to the imposition of massive tax deficiencies and penalties on the limited partners and some of the Strasser Defendants.

■ But the Strasser Defendants do not allege that any of those events that might lead to such "injury" have actually occurred or necessarily will occur. In order for an alleged injury to confer standing, it must be palpable—not speculative or hypothetical as the ones the Strasser Defendants contend they have suffered. A court will not find a case ripe for adjudication if the case involves, as here, uncertain and contingent future events that may not occur as anticipated or may not occur at all. *AMSAT Cable Ltd. v. Cablevision of Conn. L.P.*, 6 F.3d 867 (2d Cir.1993). Accordingly, because the Strasser Defendants have not alleged any injury stemming from the third party defendants' claimed failure to disclose their intended postconfirmation challenge to the Oak Tree Note that is sufficiently concrete or palpable to confer standing, the Reorganized Debtor's motion to dismiss the counterclaim for lack of subject matter jurisdiction pursuant to Federal Rule 12(b)(1) is granted.

Having found for the reorganized debtor in dismissing the counterclaim for lack of subject matter jurisdiction, I need not reach the independent, alternative grounds asserted by the various third party defendants in their motions for dismissal.

### Conclusion

Because I find that there is nothing in the third party complaint, nor anything contended at oral argument, suggesting the possibility that the Strasser Defendants may be able to sustain a valid claim even if they were allowed to replead, there is no basis for allowing them to amend their counterclaim upon the granting of the present motion. *See, e.g., Lewis v. Robinson (In re American Express Co. Shareholder Litig.)*, 39 F.3d 395, 402 (2d Cir.1994) (leave to amend will not be granted where doing so would be futile). Accordingly, the reorganized debtors' motion

to dismiss the third party complaint and counterclaim for failure to state a cognizable claim is granted with prejudice. The reorganized debtor is directed to settle an order consistent with this decision.