**SAVOY SENIOR HOUSING CORPO-RATION and Savoy Liberty Village, LLC, Plaintiffs,**

v.

**TRBC MINISTRIES, LLC, Defendant.**

**No. 08–CV–8874 (CM).**

United States District Court,
S.D. New York.

Feb. 11, 2009.

Steven Ira Fox, Wrobel & Schatz LLP, New York, NY, for plaintiffs.

Scott Stephen Flynn, John P. Leonard, McElroy, Deutsch, Mulvaney & Carpenter, LLP (Morristown), Morristown, NJ, A. Peter Brodell, Samuel T. Towell, W. Scott Street, III, Williams Mullin, Richmond, VA, for defendant.

DECISION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION OR IMPROPER VENUE, BUT GRANTING ITS MOTION TO REFER THIS MATTER TO THE BANKRUPTCY COURT.

McMAHON, District Judge.

### Background

Plaintiffs Savoy Senior Housing Corporation ("SSHC") and Savoy Liberty Village, LLC ("SLV") (collectively, "Savoy," "Savoy entities," or "plaintiffs") filed a verified complaint in the Supreme Court of New York against defendant TRBC Ministries, LLC ("TRBC") alleging multiple causes of action. On or about October 15, 2008, TRBC timely removed plaintiffs'

state court action to this Court pursuant to 28 U.S.C. § 1446.

On or about October 27, 2008, defendant filed an answer to the original complaint, as well as a motion to dismiss the complaint for lack of jurisdiction and/or improper venue. Defendant moved in the alternative to refer this case to the Bankruptcy Court for the Southern District of New York (collectively, "motions to dismiss").

On or about November 21, 2008, plaintiffs filed their opposition to TRBC's motions and moved for leave to file an amended complaint pursuant to Federal Rule of Civil Procedure 15(a)(2).

For the reasons stated below, defendant's motion to dismiss for lack of subject matter jurisdiction or improper venue is denied. However, its motion to refer this matter to the Bankruptcy Court of the Southern District of New York (hereinafter, the "Bankruptcy Court") is granted. Plaintiffs' motion for leave to amend will be decided by that court.

### Facts

This case arises out of a failed real estate development project (hereinafter, the "Project"). The Savoy entities and TRBC formed a partnership, Liberty Village Associates LP (hereinafter, "LVA" or the "Debtor"), to develop senior housing on a 140–acre parcel of land located on Candlers Mountain in Campbell County, Virginia.

TRBC is a limited liability company; its principal office is located in Lynchburg, Virginia. During the relevant time period, the members of TRBC were the Lynchburg Christian Academy and the Liberty Broadcasting Network, Inc. (Compl.¶ 4.)

These two entities were within the umbrella of the Thomas Road Baptist Church organization—the church of the now deceased Rev. Jerry Falwell. (*Id.*)

TRBC and SSHC, one of the Savoy entities, allegedly entered into a partnership because each party had something of value to offer the other. SSHC was a known real-estate developer with a proven track record for developing senior housing. (*Id.* ¶¶ 2, 6.) It agreed to develop the 140–acre parcel into senior housing. TRBC owned the land that SSHC could develop and had a large network of senior followers of Rev. Falwell and the Thomas Road Baptist Church that could be targeted for marketing purposes. (*Id.* ¶¶ 6–7.) TRBC agreed to assume responsibility for marketing. (*Id.*)

The partnership agreement (hereinafter, "LVA Agreement") made SSHC the general partner with a 1% ownership interest; SLV, the other Savoy entity, a limited partner with a 89% ownership interest; and TRBC a limited partner with a 10% ownership interest.

The parties formed their limited partnership pursuant to the Delaware Revised Uniform Limited Partnership Act. The LVA Agreement provided that the limited partners, SLV and TRBC, would not take part in the management of the business of the partnership, and it denied them the power to act for or to bind the partnership. (Flynn Decl. Ex. A. § 1.05 (hereinafter, "LVA Agreement").)[1] The LVA Agreement also contained a non-compete provision (hereinafter, the "Exclusivity Clause") that provides in relevant part:

> TRBC hereby covenants and agrees with Savoy that during the ten (10) year

---

**1.** Originally, Flynn's declaration attached only a portion of the LVA Agreement. On February 2, 2009, the Court asked that the parties provide it with the full agreement.

For the purposes of this decision, citations to Flynn's declaration, exhibit A, include the whole agreement.

period after the date hereof, unless acting with the prior written consent of Savoy or unless the partnership is sooner terminated, it will not (and will not permit its Affiliates, Partners, managers, officers and directors), directly or indirectly, within the United States to engage in the business of, or acquire or own, manage cooperate, finance, join, control or participate in the acquisition or ownership, management, operation, financing or control of, or be connected as a principal, employee, officer, director, Partner, partner, independent contractor, investor, joint venture partner, agent, affiliate, representative, consultant or otherwise with, any business which is in the business of owning, operating, developing, constructing or managing a Senior Housing Community located within twenty five miles of the City of Lynchburg, Virginia....

(*Id.* § 10.13.)

Plaintiffs allege that the Exclusivity Clause was an essential part of the LVA Agreement. They allege that, if TRBC had not agreed to the Exclusivity Clause, then they would not have agreed to participate in the Project. (Compl.¶ 22.) This is because plaintiffs believed that TRBC had an "overwhelming [marketing] advantage" (*id.* ¶ 20), in the area, and plaintiffs did not want TRBC to use this advantage to compete against the Project. (*Id.* ¶¶ 19–20.)

In 2004, after the Project failed, LVA filed for bankruptcy in the Bankruptcy Court. During the bankruptcy proceeding, Savoy—through its principal, Jacob A. Frydman ("Frydman")—hired General Capital Partners, LLC ("GCP") to identify a prospective purchaser for the Project, which was the Debtor's principal asset. GCP identified American Heritage Communities, Inc., as a potential purchaser, and introduced Savoy to American Heritage Communities, Inc., in late 2004.

Eventually, American Heritage Communities/Liberty Village LLC (hereinafter, "AHC"), a wholly owned subsidiary of American Heritage Communities, Inc., agreed to purchase SSHC's general partnership interest for $1 million and SLV's limited partnership interest for $2 million. (*Id.* ¶ 27.) As part of the agreement, AHC also agreed to purchase SSHC's right in the Exclusivity Clause—which was still binding on TRBC—for $1 million. (*Id.* ¶ 28.) This agreement was reduced to writing, and is called the Partnership Interest Purchase Agreement ("PIPA"). (*Id.* ¶¶ 28–29.)

AHC defaulted on the PIPA. (*Id.* ¶ 31.) However, AHC acquired the real property of the Debtor on different terms as part of the bankruptcy proceeding's liquidation plan (or "Plan"). (*Id.*)

On or about March 6, 2006, the Bankruptcy Court issued a confirmation order for the liquidation plan (hereinafter, "Confirmation Order"). The Confirmation Order approved AHC's acquisition of the Project free and clear of liens, except the lien of the Community National Bank. In exchange for acquiring the Project, AHC agreed to provide the money needed to fund the Plan.

The Bankruptcy Court's Confirmation Order required the Savoy entities to transfer any and all claims they had against AHC or its affiliates (for example, any claims for breach of the PIPA) to the Debtor. The plaintiffs agreed

to transfer any and all claims that they may have against AHC or its affiliates to the Debtor upon entry of this confirmation order (the "Transferred Claims"). The only party who has the right to bring the Transferred Claims is a Chapter 7 Trustee. The Transferred Claims will be released by the Debtor on the Effective Date. Mr. Frydman's claims

for indemnification from AHC (the "Indemnification Claim") shall not be transferred to the Debtor but shall be released on the Effective Date. AHC does not admit the validity of the Indemnification Claim. Upon entry of this Order, mutual releases shall be executed by the parties, held in escrow by Arent Fox PLLC, subject to an acceptable Escrow Agreement, and released on the Effective Date.

(Flynn Decl. Ex. B. at 13, ¶ 11 (hereinafter, "Confirmation Order").)

In its Confirmation Order, the Bankruptcy Court also required that SSHC's right in the Exclusivity Clause be transferred to AHC. (*Id.* at Ex. A.) The Court considered the Exclusivity Clause, which would keep TRBC from competing with the Project for 10 years, to be "integral to the success of the Project," (*id.*), and found that its transfer was essential to secure AHC's participation in funding the plan. (*Id.* at 8–9, ¶ X.)

As part of the Confirmation Order, the Bankruptcy Court set a deadline of July 14, 2006, for funding and implementing the Plan. Failure to meet this deadline meant that Community National Bank could exercise its right to proceed with the nonjudicial foreclosure of the Project. (Confirmation Order at 14, ¶ 13.)

Apparently, AHC was not able to make good on its funding commitment and ultimately, Liberty University, Inc., another entity that (as is well known) was also affiliated with Rev. Falwell, agreed to fund the plan by the deadline. In exchange for funding the Plan, Liberty University became the 85% majority member of AHC, which subsequently changed its name to Liberty Ridge, LLC ("Liberty Ridge").

The Confirmation Order expressly released (hereinafter, the "Release") the defendant, TRBC, from any claims "arising out of, the Chapter 11 Case, including, without limitation, the formulating, negotiating or implementing of the Plan, the solicitation of acceptances of the Plan, the pursuit of confirmation of the Plan, the confirmation of the Plan, the consummation of the Plan ... or the property to be distributed under the Plan, except for their gross negligence of willful misconduct ...." (Confirmation Order at 21, ¶ 32.) Plainly, this language released the defendant from any claims plaintiffs have against it based on the negotiation or pursuit of confirmation of the Plan, unless there was "willful misconduct."

This suit was brought in 2008, after plaintiffs (allegedly) discovered that Liberty Ridge, rather than AHC, funded the Plan and acquired the Debtor's property. (Compl.¶ 34.)[2] The original complaint alleged that Liberty Ridge is an entity owned and/or controlled by the defendant, TRBC (*id.*), which is contrary to "the indications" that AHC and TRBC gave to them and the Bankruptcy Court when the court issued the Confirmation Order. (*Id.* ¶ 32.) Plaintiffs further alleged that AHC was a front controlled by the defendant in order to acquire the Debtor's land (*id.* ¶ 35), and that the defendant had acquired the land in furtherance of a scheme to "usurp for itself the benefits of the investment and hard work of its partners SSHC and SLV." (*Id.* ¶ 36.) In their original pleading, plaintiffs alleged, *inter alia*, that TRBC's actions breached its non-compete obligations under the Exclusivity Clause (*id.* ¶ 37), and asserted nine specific claims for relief that resulted from the breach.

---

**2.** Presumably, the participants to the bankruptcy proceeding, and the Bankruptcy Court, knew that Liberty Ridge—rather than AHC— funded the plan. It is not clear why plaintiffs only recently learned of Liberty Ridge's involvement.

While the plaintiffs purportedly sought compensatory and punitive damages, as well as injunctive relief, the claims constituted an obvious attack on the Plan itself, because of plaintiffs asserted right to enforce the Exclusivity Clause—a right that has been assigned to AHC by the Bankruptcy Court as part of the Plan.

Defendant moved to dismiss the original complaint on the grounds that this Court lacked subject matter jurisdiction over the controversy or in the alternative because venue was improper. Both grounds were premised on defendant's contention that the case should have been brought in the Bankruptcy Court, rather than the District Court. In the alternative, defendant asked this Court to refer the case to the Bankruptcy Court.

Plaintiffs responded to the motion by cross-moving for leave to amend their complaint, to "clarify" that they were not actually trying to overturn confirmation of the Plan.[3] They concede that their original complaint was "inartfully pleaded and misstated some of the alleged facts and circumstances of the events at issue ... [which] has caused confusion on the part of the defendant," (Wrobel Aff. ¶ 3.)

In the proposed amended pleading, plaintiffs' factual allegations are "largely identical" (Frydman Aff. ¶ 4), to their original complaint. The amended pleading differs from the original in two respects. First, it deletes the specific assertions that plaintiffs seek to enforce the Exclusivity Clause, because plaintiffs concede that they no longer enjoy such a right having assigned it to AHC. (*Id.* ¶ 11.) Second, and far more important, it alleges claims that "fundamentally arise[ ] from the defendant's breach of its duties under its partnership agreement with the plaintiffs," (Pl. Opp'n at 2), including claims in misrepresentation (really fraudulent inducement); breach of duty of good faith and fair dealing; tortious interference of contract; and breach of fiduciary duty. The amended complaint also includes claims against TRBC for breach of contract, which can only relate to the Exclusivity Clause. In the proposed amended pleading, plaintiffs seek compensatory and punitive damages, as well as equitable relief.

Defendant opposed plaintiffs' cross-motion for leave to amend, and urged that it be denied because the proposed amendments are futile.

## I. Jurisdiction

### A. Rule 12(b)(1) and (3)

Based on the original complaint, defendant filed motions to dismiss pursuant to Rule 12(b)(1) and (3) of the Federal Rules of Civil Procedure. Defendant argues that the Bankruptcy Court's jurisdiction to hear this matter is exclusive and that the case should be referred to that court. Defendant maintains that, even if this Court were to grant plaintiffs leave to amend, this matter still should be heard by the Bankruptcy Court.

 On a motion to dismiss pursuant to Rule 12(b)(1), the plaintiff bears the burden of establishing that the court has subject matter jurisdiction over the action. *Malik v. Meissner,* 82 F.3d 560, 562 (2d Cir.1996). In resolving the question of jurisdiction, the court can resolve disputed issues of fact by referring to evidence outside the pleadings. The plaintiff asserting subject matter jurisdiction has the burden

---

**3.** Plaintiffs had to seek the Court's leave to amend their pleading because their time to amend it as a matter of course passed under Federal Rule of Civil Procedure 15(a)(1) once the defendant served its answer to the original complaint, which occurred on October 27, 2008.

of proving that it exists by a preponderance of the evidence. *Luckett v. Bure,* 290 F.3d 493, 496–97 (2d Cir.2002); *Zappia Middle East Constr. Co. v. Emirate of Abu Dhabi,* 215 F.3d 247, 253 (2d Cir.2000).

On a motion to dismiss a complaint under Rule 12(b)(3) for improper venue, "the plaintiff bears the burden of establishing that venue is proper." *French Transit v. Modern Coupon Sys.,* 858 F.Supp. 22, 25 (S.D.N.Y.1994). A court applies the same standard of review in Rule 12(b)(3) dismissals as Rule 12(b)(2) dismissals for lack of personal jurisdiction. *Gulf Ins. Co. v. Glasbrenner,* 417 F.3d 353, 355 (2d Cir.2005). "If the court chooses to rely on pleadings and affidavits, the plaintiff need only make a prima facie showing of [venue]. But if the court holds an evidentiary hearing ... the plaintiff must demonstrate [venue] by a preponderance of the evidence." *Id. (quoting CutCo Indus. v. Naughton,* 806 F.2d 361, 364–65 (2d Cir.1986)). The court may consider documents referenced in the complaint and documents that are in the plaintiff's possession or that the plaintiff knew of and relied on in bringing suit, *U.S. Bank Nat'l Ass'n v. Ables & Hall Builders,* 582 F.Supp.2d 605, 611 (S.D.N.Y.2008) (citation and quotation omitted).

Defendant argues that the Bankruptcy Court has exclusive jurisdiction over this case and is the only venue where this matter may be brought.

This Court clearly has subject matter jurisdiction over the dispute under 28 U.S.C. § 1332. The parties are diverse and the amount in controversy exceeds $75,000. Furthermore, 28 U.S.C. § 1334 grants a district court "exclusive jurisdiction" over bankruptcy cases originally, and original but not exclusive jurisdiction of "all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1332. Indeed, the Bankruptcy Court is an arm of this Court; if this Court lacks subject matter jurisdiction, then so does the Bankruptcy Court.

Venue is also proper under 28 U.S.C. § 1391(a)(2). Section 1391(a)(2) provides that a civil action based on diversity may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." *Id.* Venue is thus a concept about *Districts,* and not about courts within a district. Plaintiffs' claims arise from defendant's omissions and actions in New York. They claim that defendant did not disclose its affiliation with AHC to them or the Bankruptcy Court, which led to confirmation of the Plan that defrauded plaintiffs and caused them harm. The Southern District of New York is unquestionably a—perhaps *the*—proper venue for this matter.

Accordingly, defendant's motion to dismiss on the ground of lack of jurisdiction or improper venue is denied

## B. Referral to the Bankruptcy Court

The question that defendant's motions to dismiss really raises is whether this case should be referred to the Bankruptcy Court pursuant to 28 U.S.C. § 157. I agree that it should.

This lawsuit is inextricably intertwined with the prior bankruptcy proceeding, so the Bankruptcy Court should evaluate plaintiffs' claims. That was clearly the intention of the parties in the bankruptcy proceeding since the Bankruptcy Court's Confirmation Order states:

> The Court shall retain and have exclusive jurisdiction over any matter arising under the Bankruptcy Code, arising in or related to this chapter 11 case and the Plan. The Court shall also have exclusive jurisdiction:
> * * *

xv. to hear and determine any matter relating to or arising out of any action or act taken or omission in connection with or related to the formulation, preparation, dissemination, implementation, administration confirmation or consummation of the Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created or entered into in connection with the Plan.

(Confirmation Order at 18–19, ¶ 25.)

 Of course, regardless of how a confirmation order may read, it does not "confer" jurisdiction—a bankruptcy court does not have the power to create its own jurisdiction. *See* Lawrence P. King et al., *Collier on Bankruptcy* ¶ 1142.04[1], at 1142–7 (15th ed.2008). Instead, in order for the Bankruptcy Court to have jurisdiction post confirmation (broadly speaking), the outcome of the new proceeding "must still affect the Plan." *In re General Media. Inc.*, 335 B.R. 66, 74 (Bankr.S.D.N.Y.2005). Once a bankruptcy court issues a confirmation order, as happened here, its jurisdiction is limited. *Krys v. Sugrue*, 08 civ. 7416, 2008 WL 4700920 at **5–6 (S.D.N.Y. Oct.23, 2008); *In re General Media, Inc.*, 335 B.R. at 73. A party that invokes a bankruptcy court's jurisdiction post-confirmation must satisfy two requirements. "First the matter must have a close nexus to the bankruptcy plan or proceeding, as when a matter affects the interpretation, implementation, consummation, execution or administration of the confirmed plan and second, the plan must provide for the retention of jurisdiction over the dispute." *Krys*, 2008 WL 4700920 at *6 (*quoting In re Kassover*, 336 B.R. 74, 79 (Bankr. S.D.N.Y.2006)).

 Here, both requirements are met. The plaintiffs' suit has a close nexus to the bankruptcy plan because it implicates the Bankruptcy Court's Confirmation Or-

der, and alleges in effect, fraud on the Bankruptcy Court and on plaintiffs as participants in the bankruptcy proceeding—despite plaintiffs' assertions to the contrary. Plaintiffs' proposed amended causes of action are based on defendant's purported misrepresentations and omissions, made or not made as part of a scheme to secure the liquidation plan's most valuable assets: the Project and Exclusivity Clause. Since plaintiffs' allegations strike at the heart of the liquidation plan—the transfer of the Plan's most valuable assets—their causes of action implicate matters that affect the interpretation and administration of the confirmed plan. Indeed, in addition to damages, plaintiffs seek equitable remedies that, if granted, would have the potential to affect the Plan.

 Plaintiffs' allegations of intentional misrepresentation are particularly relevant to the Chapter 11 case. This is because, "A court should strive ... to find an appropriate method of providing relief ... so as not to allow a party to benefit by the commission of fraud," *Collier on Bankruptcy* ¶ 1144.06[1] [a], 1144–12, in connection with the confirmation of a liquidation plan. *See id.* It is of course too late for the Bankruptcy Court to revoke its Confirmation Order even "if such order was procured by fraud" 11 U.S.C. § 1144, because "A party in interest must request the revocation within 180 days of the date of entry of the order of confirmation." *OneBeacon Ins. Co. v. Empress Ambulance Service, Inc.*, 02 civ. 2595, 2003 WL 1857622 at *4 (S.D.N.Y. Mar.28, 2003). "Courts strictly construe this 180 day time limitation, applying it even if a fraud is discovered beyond that deadline." *In re 680 Fifth Ave. Associates*, 209 B.R. 314, 322–23 (Bankr.S.D.N.Y.1997). However, "a court is not without power to remedy an injustice created by a fraud in a bankruptcy case," *Collier on Bankruptcy*

598

¶ 1144.04[2][a], 1144–7, even after the period for revocation has expired. *See id.* "A court is understandably reluctant to give a free pass to a debtor that has committed fraud. Consequently, the refusal to revoke a confirmation order because of mootness does not foreclose other remedies, such as a damage action based on fraud." *In re Trico Marine Services, Inc.,* 337 B.R. 811, 815 (Bankr.S.D.N.Y.2006).

If the plaintiffs and the Bankruptcy Court really were misled about the relationship (if there was one) between TRBC and AHC, then the Bankruptcy Court is in the best position—because of its familiarity with the case—to consider whether any relief is warranted. It is only appropriate for that court to assess defendant's actions.

The second requirement is also met. The plain text of Bankruptcy Court's Confirmation Order, as shown above, makes clear that the Bankruptcy Court intended to retain broad post-confirmation jurisdiction.

Therefore, the Court is referring this case to the Bankruptcy Court, which will rule on plaintiffs' motion for leave to amend the complaint.

This constitutes the decision and order of the Court.